CAVANAGH, J.
The issue presented is whether the death of the principal revokes his agent’s order to transfer limited partnership shares when all necessary *401 actions by the agent were completed before the principal’s death, but the transfer was not yet completed by a third party. We hold that an agent’s actions are not revoked by the death of the principal when the agent has completed all actions necessary for the transaction before the principal’s death. Therefore, we reverse the decision of the Court of Appeals and affirm the decision of the trial court granting the petitioners summary disposition.
I. FACTS
Decedent, Eugene T. Capuzzi, M.D., owned shares in a limited partnership. Dr. Capuzzi’s will divided that interest equally among his three children, Michael, Eugene Jr., and Christina. A few days before his death, Dr. Capuzzi directed Michael to transfer the limited partnership shares to his sons, Michael and Eugene, Jr., petitioners in this case. Michael was acting as Dr. Capuzzi’s agent pursuant to a durable power of attorney agreement. The agreement gave Michael “full power and authority to do and perform every act and thing whatsoever requisite and necessary to be done.” The transfer would eliminate Christina’s interest in the limited partnership shares; Christina is the respondent in this case.
Michael contacted the limited partnership on August 10,1998, and again on August 11,1998, and he directed that the shares be transferred pursuant to the power of attorney and Dr. Capuzzi’s wishes. Dr. Capuzzi died on August 14, 1998. On August 19, 1998, the limited partnership sent Michael a letter stating that Dr. Capuzzi’s death had revoked the power of attorney and, therefore, the transfer could not be completed. During probate proceedings, petitioners objected to the shares passing under the will. The probate court granted *402 summary disposition for petitioners. The Court of Appeals reversed and remanded, holding that the transfer of the shares could not be completed because Dr. Capuzzi’s death immediately revoked the power of attorney.[1] This Court granted petitioners’ application for leave to appeal. 468 Mich 928 (2003).
II. STANDARD OF REVIEW
We review de novo questions of law. Hagerman v Gencorp Automotive, 457 Mich 720, 727; 579 NW2d 347 (1998). Likewise, “we review de novo decisions on summary disposition motions.” American Federation of State, Co & Muni Employees v Detroit, 468 Mich 388, 398; 662 NW2d 695 (2003).
III. ANALYSIS
It is a longstanding legal principle that a duly authorized agent has the power to act and bind the principal to the same extent as if the principal acted. See, e.g., Cowan v Sargent Mfg Co, 141 Mich 87, 91; 104 NW 377 (1905); see also 1 Restatement Agency, 2d, § 12, p 57. A power of attorney provides the agent with all the rights and responsibilities of the principal as outlined in the agreement. See, e.g., MCL 700.5501 et seq.; Kuite v Lage, 152 Mich 638, 640; 116 NW 467 (1908). In effect, the agent stands in the shoes of the principal.
It is also well-settled that the death of the principal revokes the authority of the agent, unless the agency is coupled with an interest. See, e.g., Chrysler Corp v Blozic, 267 Mich 479, 481-482; 255 NW 399 (1934); Weaver v Richards, 144 Mich 395, 413; 108 NW 382 *403 (1906). Any act done by the agent after the principal dies cannot affect the estate. 3 Am Jur 2d, Agency, § 52, pp 468-469. This is true even if an agent performed some of the acts necessary in a single transaction but not all of them. 2A CJS, Agency, § 122, pp 394-395. If an agent is in the midst of a transaction when the principal dies, the transaction cannot continue, regardless of the principal’s previously stated wishes.
However, when an agent has completed all necessary actions and all that is left is for a third party to act to complete the transaction, we hold that the principal’s death has no effect on the validity of the transaction and does not relieve the requirement on the third party to act. This is because the agent’s actions were complete at the time of the principal’s death. See 2A CJS, Agency, § 109, p 386. Notably, if a third party requires additional information to confirm that the agent has the authority to act or if, for example, the third party requires completion of an additional form indicating power of attorney, then the agent has obviously not completed all actions necessary for the transaction. If the principal dies before the agent meets the third party’s requirements, then the third party is not required to follow the directive of the agent. This is because all necessary actions have not been completed by the agent before the principal dies.
When all necessary actions have been completed, just as the third party would be required to follow the directive of the principal, the third party is also required to follow the directive of the agent. See 3 Am Jur 2d, Agency, § 1, p 429 (“the agent is the representative of the principal and acts for, in the place of, and instead of, the principal”) (emphasis added); 2A CJS, Agency, § 4, p 308 (“a person may properly appoint an agent to do the same acts and achieve the same legal conse *404 quences as if he or she had acted personally see also 2A CJS, Agency, § 1, p 306. Although the agent’s authority to act terminates when the principal dies, actions completed before the termination no longer require the agent to exercise authority. Therefore, the principal’s death does not revoke already completed actions by the agent. See 2A CJS, Agency, § 109, p 386 (“A revocation of the agent’s authority cannot retroactively affect the completed acts of the agent.”).
In this case, in accord with Dr. Capuzzi’s wishes[2] and acting as Dr. Capuzzi’s agent pursuant to a durable power of attorney, Michael contacted the third party and directed that the shares be transferred. Just as Dr. Capuzzi had the authority to compel the third party to transfer the shares, Michael, as Dr. Capuzzi’s agent, possessed the same authority. Once he ordered the third party to transfer the shares, this concluded the agent’s actions that were necessary to complete the transaction. All that remained was for the third party to act. Again, in this case, the agent did all that was required to transfer the shares. The failure to transfer the shares was solely the result of the third party’s delay and had nothing to do with the third party’s internal procedures or concerns that the agent did not have the proper authority.
*405 Notably, the agent acted on behalf of the principal before the agent’s authority was revoked by the principal’s death and, thus, there was nothing precluding the third party from relying on the agent’s authority. Because there was nothing prohibiting the agent from ordering the transfer when he did, that is, while the principal was still alive, there was nothing prohibiting the third party from acting pursuant to the validly given order. The third party’s authority to transfer the shares does not depend on the agent’s authority to act on behalf of the principal at the time of the transfer of the shares; rather, it depends on the agent’s authority to act at the time the agent ordered the shares to be transferred. Therefore, because the agent properly exercised his authority while the principal was still alive, see 2A CJS, Agency, § 88, p 364, the third party was not excused from acting on the agent’s authority.
Although MCL 700.497 has been repealed, we are aware that it was in effect at the time of the agent’s order to transfer the shares. MCL 700.497(1) stated, in pertinent part, the following:
The death of a principal who has executed a power of attorney in writing, durable or otherwise, does not revoke or terminate the agency of the attorney in fact, agent, or other person who, without actual knowledge of the death, acts in good faith under the power of attorney or agency. An action so taken, unless otherwise invalid or unenforceable, binds the principal and the principal’s heirs, devisees, and personal representatives.
In brief, MCL 700.497(1) stated that the death of a principal who had executed a written power of attorney did not terminate the agency of the attorney in fact, agent, or other person who acted under the power of attorney or agency in good faith without knowledge of *406 the death. MCL 700.497(1) is not germane to this case because the principal’s agent acted before the principal died.
Also, MCL 700.497(2) stated the following:
In the absence of fraud, an affidavit executed by the attorney in fact or agent stating that he or she did not have, at the time of doing an act pursuant to the power of attorney, actual knowledge of the revocation or termination of the power of attorney by death, disability, or incompetence is conclusive proof of the nonrevocation or nontermination of the power at that time. If the exercise of the power requires execution and delivery of any instrument that is recordable, the affidavit when authenticated for record is likewise recordable.
This section essentially stated that an affidavit executed by the attorney in fact or agent stating that he did not have knowledge of the principal’s death at the time of doing the act in question is conclusive proof of nontermination of the power at that time and the act must be enforced. Thus, if, unknown to the agent, the principal died, the agent’s act must be enforced nonetheless once the agent files an affidavit. The third party could not rebut such an affidavit and would have no authority or basis to refuse to carry out the agent’s order. Of course, this section is not applicable to the facts of this case because when the agent completed his act the principal was still alive. And this section is not applicable to the third party because the statute only applied to the attorney in fact or agent and the third party in this case is neither. However, it is important to note that MCL 700.497(2) mandated that the actions of an agent be enforced when the agent was unaware of the principal’s death at the time of the act in question; therefore, actions taken by an agent, at the principal’s behest, when the principal was still alive are certainly enforceable. If we were to hold to the contrary, the *407 actions of a third party could revoke the completed acts of an agent. This would circumvent the intent of the principal and allow a third party’s actions to control. A third party’s delay, whether intentional or not, should not be allowed to thwart the principal’s wishes when the principal’s agent has completed all necessary actions before the principal’s death. Further, to find that an agent had the authority to order the transfer of the shares but that the third party did not have to follow the order would render the agent’s authority a nullity.
We note that our decision today does not affect situations in which an agent’s actions were not yet complete at the time of the principal’s death. Our decision only addresses situations in which an agent’s actions were complete and the only actions remaining to be done are those of the third party. Although the principal’s death revokes the agent’s authority to act on behalf of the principal, it does not void the acts completed by the agent on behalf of the principal before the principal’s death. We also note that our decision today does not preclude a third party from taking reasonable steps to ensure that an agent’s order stems from a proper power of attorney. See Cutler v Grinnell Bros, 325 Mich 370, 376; 38 NW2d 893 (1949). However, in this case, the third party’s delay was not related to any action being taken to ensure that the agent was not acting improvidently or fraudulently.
IV CONCLUSION
We hold that an agent’s completed actions are not revoked by the death of the principal when all necessary actions have been taken by the agent before the principal’s death. Accordingly, we reverse the decision of the Court of Appeals and affirm the decision of the trial court.
*408 WEAVER, KELLY, and MarkMAN, JJ., concurred with Cavanagh, J.

 Unpublished opinion per curiam, issued February 15, 2002 (Docket No. 227750).

 We note that there is no assertion that Dr. Capuzzi, from the time the agent acted to the time of the doctor’s death, ever wavered in his decision to transfer. The record also contains an affidavit from decedent’s wife of forty-four years averring that respondent had, for a number of years, been estranged from her father; that despite the affiant’s efforts to obtain reconciliation and reunification, respondent had refused to visit her parents; and that in 1998, respondent had refused to visit her father even though he was seriously ill. The affiant continued that her husband died not wanting his daughter to receive the joint venture shares and that he also wanted to divest himself of all remaining assets to avoid probate.