WERDLOW v DETROIT POLICEMEN AND FIREMEN RETIREMENT
SYSTEM BOARD OF TRUSTEES

Docket No. 254516. Submitted July 12, 2005, at Detroit. Decided January
12, 2006, at 9:00 a.m. Leave to appeal sought.

Sean Werdlow, chief financial officer and finance director for the city
of Detroit; several city officials; and the city itself brought an
action in the Wayne Circuit Court against the Detroit Policemen
and Firemen Retirement System Board of Trustees; the Detroit
Firefighters Association Local 344, I.A.F.F.; and the Detroit Police
Command Officers Association, seeking enforcement against the
last two defendants of a binding arbitration decision against the
Detroit Police Officers Association (DPOA) relating to an increase
in the size of the board of trustees of the pension fund to 12
members. The fund is shared by the latter two defendants with the
DPOA and another union. The binding arbitration of issues
between the city and the DPOA was held under MCL 423.231 *et
seq.* by a panel at the Michigan Employment Relations Commis-
sion, and considered numerous issues, including the size of the
board of trustees, which, before the arbitration, had consisted of
11 people, including six union representatives. The court, William
J. Giovan, J., granted the defendants' motion for summary dispo-
sition, concluding that the court lacked subject-matter jurisdiction
because the plaintiffs sought enforcement of an arbitration agree-
ment against nonparties to the arbitration and that violations of
due process of law would occur by requiring the defendant unions
to be bound by an arbitration proceeding in which they did not
participate. The plaintiffs appealed.

The Court of Appeals *held*:

1. The trial court did not err in holding that application of the
binding arbitration award's expansion of the board of trustees to
12 members would result in a deprivation of due process on the
part of the defendant unions because they were unable to partici-
pate in the arbitration proceeding involving other parties. The
retired members of four unions are eligible for benefits from the
Detroit Policemen and Firemen Retirement System. All the unions
involved in this case were entitled to a compulsory arbitration to
resolve their labor disputes, including the issue of the size of the

board of trustees, because, in lieu of the right to strike, that entitlement is granted by MCL 423.321. A binding arbitration involving only one of the unions cannot be binding on the other nonparticipating unions without violating due process because it would result in a deprivation of benefits from the nonparticipating unions without the benefit of any hearing or the presentation of evidence before the arbitration panel. Due process requires notice of the nature of the proceedings, a meaningful time and manner to be heard, and an impartial decision maker. The defendant unions received none of these.

2. A binding arbitration decision may be reviewed by a circuit court only for the reasons that the arbitrator was without or exceeded its jurisdiction, that the order is unsupported by competent, material, and substantial evidence on the whole record, or that the order was procured by fraud, collusion, or other similar and unlawful means. MCL 423.242. The plaintiffs sought enforcement of the arbitration agreement against nonparties that did not participate in the proceedings, which is not a ground for the circuit court to review the arbitration decision.

3. The fire fighters' union contract referred to the composition of the board of trustees and also referred to parity of provisions relating to wages with the personnel of the other unions in this case. However, there is no indication that the fire fighters' union contemplated that the composition of the pension board could be altered in their contract by parity. The labor arbitration award cannot be imposed on the defendant unions on the basis of parity. Because the composition of the pension board has a significant effect on employee benefits, the issue of board size is one that requires mandatory bargaining. The plaintiffs have inappropriately requested the Court of Appeals to construe bargaining agreements that the arbitration panel has not examined and where the defendant unions have not had the opportunity to address the issue of the composition of the pension board.

4. The circuit court did not abuse its discretion in denying the motion for reconsideration. After the motion was heard, the plaintiffs submitted documentary evidence to support an allegation that two existing pension boards could function. The defendant did not have the opportunity to rebut that allegation. The plaintiffs gave no reason why the evidence was not presented at the time of the hearing on the cross-motions for summary disposition.

Affirmed and remanded.

COOPER, P.J., concurring, stated that the case may simply be resolved by the recognition that the Court of Appeals does not have jurisdiction in this case under 1969 PA 312. The case should be remanded to allow the trial court to clarify its order granting the defendants' motion for summary disposition and for grievance arbitration that includes the union defendants.

1. ARBITRATION — COMPULSORY ARBITRATION — DUE PROCESS — PUBLIC SAFETY OFFICERS' UNIONS — BENEFIT FUNDS.

Where compulsory arbitration under MCL 423.231 *et seq.* is held with one public safety officers' union regarding a benefit fund, but there are multiple unions covered by the same benefit fund, a change in the fund by the arbitration order would not be binding on the nonparticipating unions without violating due process because, were it binding on them, it would result in a deprivation of benefits without the benefit of any hearing or presentation of evidence before the arbitration panel.

2. APPEAL — BINDING ARBITRATION ORDER — PUBLIC SAFETY OFFICERS' UNIONS.

A court may review a binding arbitration order involving a public safety officers' union only if the arbitration panel was without or exceeded its jurisdiction, if the order is unsupported by competent, material, and substantial evidence on the whole record, or if the order was procured by fraud, collusion, or other similar and unlawful means (MCL 423.242).

*Abbott, Nicholson, Quilter, Esshaki & Youngblood, P.C.* (by *Kenneth S. Wilson* and *Daniel G. Kielczewski*), and *Miller, Canfield, Paddock & Stone, P.L.C.* (by *John H. Willems*), for Sean Werdlow and others.

*Martens, Ice, Klass, Legghio & Israel, P.C.* (by *Christopher P. Legghio* and *John Adam*) for the City of Detroit Policemen and Firemen Retirement System Board of Trustees.

*Helveston & Helveston, P.C.* (by *Ronald R. Helveston*), for the Detroit Fire Fighters Association Local 344, I.A.F.F.

*Sachs Waldman, P.C.* (by *Mary Ellen Gurewitz*), for the Detroit Police Command Officers Association.

Before: COOPER, P.J., and FORT HOOD and R.S. GRIBBS*,
JJ.

FORT HOOD, J. A labor dispute between the city of
Detroit and the Detroit Police Officers Association
(DPOA) was submitted to binding arbitration pursuant
to 1969 PA 312 (Act 312), MCL 423.231 *et seq.*[1] The
arbitration panel determined that the composition of
the pension board would be altered. Previously an
11-member board, it was concluded that two board
members would be replaced and a twelfth member
would be added. The same pension board acted on
behalf of four different unions, and participation in the
arbitration was limited to plaintiff city and the DPOA.
Although the arbitration involved only one union, the
contract governing the union for the Detroit Police
Lieutenants and Sergeants Association (DPLSA) con-
tained an express provision adopting the conditions of
the DPOA agreement.[2] However, the remaining two
unions,[3] whose members' retirement benefits were gov-
erned by the same pension board as the members of the
DPOA, allegedly did not have the same language in

---

* Former Court of Appeals judge, sitting on the Court of Appeals by
assignment.

[1] Act 312 provides for compulsory arbitration for police and fire
departments because they are forbidden from striking. *Police Officers
Ass'n v Ottawa Co Sheriff (On Reconsideration)*, 264 Mich App 133, 138;
694 NW2d 757 (2004). To maintain the high morale of employees and
efficient department operations, the act provides an alternate, binding
procedure for resolution of disputes. *Id.*

[2] The application of the arbitration award to the DPLSA is not at issue
in this appeal.

[3] The remaining two unions are defendant Detroit Fire Fighters
Association Local 344, I.A.F.F. (DFFA), and defendant Detroit Police
Command Officers Association (DPCOA). Although the pension board
(City of Detroit Policemen and Firemen Retirement System Board of
Trustees) is named as a defendant, this entity is involved in order to
determine whether the 12-member board should be recognized.

their collective bargaining agreements. Nonetheless, plaintiffs alleged that the two remaining unions were bound by the Act 312 arbitration award involving the city and the DPOA through the labor principle of parity.[4] Plaintiffs noted the fact that, in the past, the unions had filed suit to obtain wages and compensation that had been negotiated in other Act 312 proceedings. Plaintiffs attempted to seat the 12-member pension board, but were rejected. Consequently, plaintiffs filed suit to seat the 12-member board and allow it to govern the four unions regardless of the participants in the Act 312 arbitration ruling that altered the composition of the board. The trial court granted defendants' motion for summary disposition and denied plaintiffs' motion for summary disposition, concluding that violations of due process of law would occur by requiring defendant unions to be bound by an arbitration proceeding in which they did not participate. We affirm the trial court's decision regarding summary disposition, but remand for clarification of the order.

I. PROCEDURAL HISTORY

On October 9, 2003, plaintiffs filed a complaint for declaratory and injunctive relief.[5] This complaint alleged that the Policemen and Firemen Retirement

---

[4] "Parity" is defined as "1. equality, as in amount, status or character. 2. equivalence; correspondence; similarity; analogy." *The Random House of the English Language: Second Edition Unabridged.*

[5] Plaintiffs submitted appendices with their appellate brief that indicated that an amended complaint was filed; however, it was not found in the lower court record. Additionally, it appeared that there were residual lawsuits filed as a result of the attempted enforcement of the Act 312 arbitration between plaintiff city and the DPOA. Defendant DFFA filed a lawsuit requesting injunctive relief to preclude the alteration of the pension board. Moreover, review of the appendices filed by plaintiffs indicated that the pension board also filed litigation because it did not

System (the system) was a tax qualified, defined benefit plan established to provide retirement allowances to police officers, fire fighters, and their beneficiaries. Pursuant to federal and state statutory requirements, the assets for the system were held in a trust fund separate and distinct from city assets with administration of the system and the fund by the board of trustees. Plaintiffs asserted that the composition of this pension board was a mandatory subject of bargaining. On June 15, 2001, the DPOA filed with the Michigan Employment Relations Commission (MERC) a petition to initiate Act 312 binding arbitration proceedings involving employment condition disputes, including wages and hours, for a collective bargaining agreement to cover the period from July 1, 2001, to June 30, 2004. The prior collective bargaining agreement had a provision, article 46, that set forth the composition of the board of trustees. These 11 members were: (1) the mayor or his representative; (2) the president of the city council or other council member; (3) the city treasurer or deputy treasurer; (4) the chief of police or designated representative; (5) the fire commissioner or designated representative; and (6) to (8) three fire fighters who were members of the system and elected by their peers and (9) to (11) three police officers who were members of the system and elected by their peers (Union Board Members).

In the complaint, plaintiffs asserted that the function of the pension board was to render decisions for the benefit of the long-term operation of the retirement system. The board was to act on recommendations of the actuary and could not modify, expand, or increase pension benefits. During the collective bargaining pro-

know how to proceed in light of the Act 312 arbitration ruling between plaintiff city and the DPOA. However, there was no order of consolidation in the lower court record.

cess before the submission to arbitration, plaintiff city proposed amendments of article 46 that would have altered the board composition to provide for equal representation of the employer and the employees "to provide a method of resolving actuarial and non-actuarial issues in the event of a Board deadlock." Because six of the 11 trustees on the board were Union Board Members and union officers, it was asserted that the unions utilized the majority status of the existing article 46 to obtain city benefits that could not be gained through collective bargaining or Act 312 arbitration. It was further alleged that the Union Board Members majority also utilized its status to obtain member benefits not authorized by the system, and that the DPOA opposed this proposal and included the issue in the arbitration.

Hearings were held between October 10, 2002, and April 11, 2003, before the arbitration panel issued an award on August 28, 2003. Plaintiffs asserted that the DPOA arbitration panel identified clear and convincing evidence that the unequal representation on the board had affected the city's budget and member benefits. Therefore, the arbitration panel altered the composition of the board and determined that it would consist of: (1) the mayor or his representative; (2) city council president or other council representative; (3) city treasurer or deputy treasurer; (4) finance director or designated representative; (5) budget director or designated representative; (6) corporation counsel or designated representative; (7) to (9) three member fire fighters elected by peers; and (10) to (12) three member police officers elected by their peers. Plaintiffs alleged that the DPOA award incorporated the change of the composition of the board into the DPLSA agreement.

Plaintiff city was also a party to the collective bargaining agreement with the Detroit Fire Fighters Association, Local 344 I.A.F.F. (DFFA). That agreement expired on June 30, 2001, but continued to be in effect by mutual agreement. Despite the fact that plaintiff city and defendant DFFA were involved in Act 312 arbitration, plaintiffs did not wait to determine the outcome of the proceeding and any effect on the pension board. Rather, plaintiffs alleged that the DFFA agreement provided that its members were the beneficiaries of the same system as the members of the DPOA. Specifically, plaintiffs alleged that the DFFA agreement provided for the same board and the same benefits. Therefore, the DPOA agreement addressing board composition was subject to parity and had to be incorporated into the DFFA agreement. On the basis of the contractual principle of "parity," the wages and benefits, including pension benefits, automatically passed to members of the DFFA and were incorporated into the DFFA agreement. Plaintiffs further asserted that these benefits were not separately negotiated by plaintiff city and the DFFA and were not submitted to Act 312 proceedings. Thus, plaintiffs concluded that the DFFA agreement had to be amended to incorporate the DPOA award addressing board composition.

Plaintiffs also contended that the Union Board Members majority on the pension board constituted a "cash benefit" to DFFA members. A proposal submitted to the arbitration panel under Act 312 had to be defined as "economic" or "non-economic." Economic proposals involved payment of compensation or benefits to union members, and the panel was required to adopt one party's economic proposal as submitted without modification. Plaintiffs alleged that "[t]he Board composition proposal is clearly one effecting [sic] 'compensation' or 'cash benefits' as the Arbitrator in the DPOA Award shows that the

Unions majority status has, in fact been a 'cash benefit' to Union members." Plaintiffs further alleged that, on the basis of the Union Board Members majority status, over $230 million of benefits had been obtained in excess of those provided by the system for active employees and retirees.

Although plaintiffs alleged that they sought to enforce the Act 312 arbitration award against the DFFA and alleged that the contractual benefits or changes were granted through parity of the agreements, the complaint filed by plaintiffs did not raise traditional claims, but contained the following counts:

### COUNT I

Plaintiffs are entitled to Declaratory Relief that the Composition of the Board is a Benefit Subject to Parity. Union Board Members, Between January 1998 and January 2001, Consistently Rejected the Contribution Rate Computed By The Plan's Actuary For A Higher One To Force the City To Give Union Member Benefits[.]

* * *

### COUNT II

Plaintiff's [sic] are entitled to Declaratory Relief that the Composition of the Board is a Benefit Subject to Parity. Along With Using Its Majority Status On The Board To Extract Benefits From The City It Cannot Gain Through Collective Bargaining Or Arbitration Pursuant To Act 312, The Union Dominated Board Just "Gives" Its Members Benefits Not Authorized By the Plan[.]

* * *

### COUNT III

Plaintiff's [sic] are entitled to Declaratory Relief that the Compensation [sic, Composition] of the Board is a Benefit Subject to Parity as the DPOA Award Establishes That Board Composition Is An Economic Benefit to Firefighters[.]

* * *

## COUNT IV

Pending Resolution of Proper Identity of Trustees, this Court should appoint Special Fiduciaries to assure Ongoing Administration of the Plan and Trust that Protects the Rights of Members and Provides for Orderly Administration[.]

* * *

## COUNT V

This Court has Jurisdiction and Authority, Pursuant to § 601 of the Revised Judicata [sic, Judicature] Act, MCL 600.601 and MCL 555.26 and 555.27 to Grant Relief as is Necessary to Preserve and Prevent Dissipation of Fund Assets.

This last count of the complaint included the following paragraphs delineating the alleged benefits the unions acquired because of a pension board membership majority that favored the unions:

123. The Award held that the union majority on the Board rejected the actuary's computed rate in order to obtain benefits for DPOA members not already provided for in Plan documents.

124. The union dominated Board rejected contribution rates computed by the Plan's actuary in favor of higher contribution rates in order to force the City to give additional benefits to union trustees, as well as union members.

125. The union dominated Board, along with using its majority status to extract $218,000,000 of benefits specifically denied them by two experienced MERC arbitrators in Act 312 Awards, used their majority status to obtain substantial allocations of fund assets for themselves. . . .

126. Any attempt by the union trustees on the Board to oppose implementation of the DPOA Award and the LSA Award and to, use fund assets to oppose implementation of

these awards violates MCL 38.1133(6)(a) and would other-
wise lead to further dissipation of fund assets.

In essence, the complaint alleged that a change in board
composition was necessary because the majority of the
board favored union members, acted for the sole benefit
of union members, and did not act in accordance with
arbitration decisions.[6]

On October 29, 2003, defendant DFFA filed a
motion for summary disposition based on MCR
2.116(C)(4) and (7) in lieu of an answer. Defendant
DFFA asserted that the change of the composition of
the pension board from 11 members to 12 was never
bargained with the authorized bargaining represen-
tatives of the DFFA, and, therefore, the parties'
collective bargaining agreement continued to have
full force and effect between defendant DFFA and
plaintiff city. Defendant DFFA contended that plain-
tiffs could not obtain declaratory relief when they
requested enforcement of an arbitration decision
against a nonparty to the arbitration. Therefore, the
trial court was without jurisdiction to provide plain-
tiffs declaratory or injunctive relief. Moreover, Act
312 provided that a decision by the arbitration panel
was binding on the parties, not a nonparty. Defendant
DFFA also asserted that the appropriate course of
action was to submit the issue of the composition of
the pension board to the Act 312 proceeding involving
plaintiff city and defendant DFFA. Plaintiffs also
moved for summary disposition, reiterating the claim

---

[6] On October 14, 2002, the Detroit Police Command Officers Associa-
tion (DPCOA) filed a motion to intervene in the action. The trial court
granted the motion to intervene on the basis of an agreement by the
parties. Additionally, the trial court initially granted injunctive relief to
plaintiffs. The trial court's ruling regarding injunctive relief is not at
issue on appeal.

raised in the complaint that change to the composition of the board was necessary and proper to achieve parity.

Following oral arguments regarding the cross-motions for summary disposition, the trial court held that a due process violation occurred when the composition of the pension board was altered without all applicable unions participating in the arbitration proceeding. Defendants were not given notice of the proceedings and the opportunity to be heard during the arbitration. The trial court further held that the composition of the pension board could not be altered by filing a lawsuit to impose the new board on nonparticipating unions.

On January 5, 2004, a written order entered that provided:[7]

> This matter having been brought before the Court by Plaintiffs' Motion for Summary Disposition and Defendant Detroit Fire Fighters Association's Motion to Dismiss in Lieu of Answer, briefs and responses having been filed by the parties, and the Court otherwise being fully advised in the premises,
>
> It is hereby ordered that there can be only one (1) Detroit Policemen and Firemen Retirement System Board of Trustees ("Board"), and that the status quo of the Board composition shall be maintained, consisting of the following eleven (11) members, as provided in the Collective Bargaining Agreements between the Detroit Fire Fighters Association and City of Detroit, and the Detroit Police Command Officers Association and the City of Detroit:
>
> 1. The Mayor of the City or his/her designated representative, ex-officio.

---

[7] Although it was alleged that this order was not approved for signature, the order was indeed signed and can be found in the lower court record. There is no indication that the order was ever vacated.

2. The President of the City Council, or another member thereof selected by the City Council, ex-officio.

3. The City Treasurer or Deputy City Treasurer, ex-officio.

4. The Chief of Police or a designated representative appointed to serve in his/her absence, ex-officio. This representative shall be a person in the Police Department and shall serve at the pleasure of the Chief.

5. The Fire Commissioner or a designated representative appointed to serve in his/her absence, ex-officio. This representative shall be a person in the Fire Department and shall serve at the pleasure of the Commissioner.

6. Three Firefighters who are members of the system to be elected by the Firefighter members under such rules and regulations as may be established by the Fire Commissioner to govern such elections. Such trustees shall consist of:

a. Two to be elected by and from members holding the rank of Lieutenant (or its equivalent) and lower ranks.

b. One to be elected by and from the members holding rank above the rank of Lieutenant (or its equivalent).

7. Three Police Officers who are members of the system to be elected by the Police Officer members under such rules and regulations as may be established by the Police Chief to govern such elections. Such trustees shall consist of:

a. Two to be elected by and from members holding the rank of Lieutenant (or its equivalent) and lower ranks.

b. One to be elected by and from the members holding the rank above the rank of Lieutenant (or its equivalent).

Annual elections shall be held in the Police and Fire Departments during the month of May to elect a trustee to fill the vacancy created by the expiration of a term.

In each such election the members entitled to vote shall be those of classes provided above, the term of whose representative is about to expire. The terms of office for all

elected trustees shall be three years. Elected trustees holding office of [sic] the effective date of this provision shall serve the remainder of their term.

It is further ordered that the composition of the Board, as set out in this Order, cannot be modified until such time as each of the four (4) collective bargaining agents, the Detroit Police Officers Association, the Detroit Police Lieutenants and Sergeants Association, the Detroit Police Command Officers Association and the Detroit Fire Fighters Association, uniformly agree to any change to the composition of the Board;

It is further ordered that Plaintiff's [sic] Motion for Summary Disposition is denied for the reasons stated on the record;

It is further ordered that summary disposition is granted to Defendant Detroit Police Command Officers Association;

It is further ordered that Defendant Detroit Fire Fighters Association's Motion to Dismiss is granted for the reasons stated on the record, and that the above-captioned matter shall be dismissed with prejudice.

On February 23, 2004, plaintiffs filed a motion for reconsideration or clarification. Plaintiffs alleged that the issue of two boards was not submitted to the court for adjudication. The arbitration panel ruled that a 12-member board should govern the retirement system for the DPOA and DPLSA. Those two entities did not challenge the award. Rather, defendant unions, the DFFA and the DPCOA, challenged the proposed composition of the board. In any event, on the basis of an affidavit of Arvin Heilman, the pension actuary and the city's consulting actuary to the system for over 20 years, it was alleged that there could be two boards. However, this affidavit was executed on February 20, 2004, and was not submitted with the pleadings when the trial court entertained the cross-motions for summary disposition. The trial court

denied the motion for reconsideration. Plaintiffs appeal as of right.

## II. STANDARDS OF REVIEW

Summary disposition decisions are reviewed de novo on appeal. *In re Capuzzi Estate*, 470 Mich 399, 402; 684 NW2d 677 (2004). Constitutional issues are reviewed de novo as a matter of law. *Studier v Michigan Pub School Employees' Retirement Bd*, 472 Mich 642, 649; 698 NW2d 350 (2005). Issues of statutory construction present questions of law that are reviewed de novo on appeal. *Cruz v State Farm Mut Automobile Ins Co*, 466 Mich 588, 594; 648 NW2d 591 (2002). The construction and interpretation of a contract presents a question of law that is reviewed de novo. *Bandit Industries, Inc v Hobbs Int'l, Inc (After Remand)*, 463 Mich 504, 511; 620 NW2d 531 (2001).

## III. DUE PROCESS OF LAW

Although plaintiffs' statement of the questions presented alleged that the trial court erred in concluding that the enforcement of the arbitration award against nonparties would violate due process of law, plaintiffs did not brief the question whether a due process violation occurred. Rather, plaintiffs examined the trial court's ruling and concluded, "It appears that the [trial court] opined that the DPCOA and DFFA had not waived its [sic] right to bargain or arbitrate with the City over the composition of the Board. This analysis otherwise was erroneous and immaterial to the issue before this Court." We disagree with plaintiff's characterization of the trial court's ruling and the challenge to the trial court's ruling.[8]

---

[8] Review of the trial court's ruling reveals that it held that a due process violation occurred because defendant DFFA was not given notice of the Act 312 arbitration between plaintiff city and the DPOA or the opportunity to be heard.

As previously stated, this constitutional question is reviewed de novo on appeal. *Studier, supra.* Due process enforces the rights enumerated in the Bill of Rights and includes both substantive and procedural due process. *Kampf v Kampf,* 237 Mich App 377, 381-382; 603 NW2d 295 (1999). Procedural due process serves as a limitation on government action and requires a government to institute safeguards in proceedings that affect those rights protected by due process, including life, liberty, or property. *Id.* at 382. Due process is a flexible concept applied to any adjudication of important rights. *Thomas v Deputy Warden, State Prison of Southern Michigan,* 249 Mich App 718, 724; 644 NW2d 59 (2002). The procedural protections, which include fundamental fairness, are based on what the individual situation demands. *Id.* Fundamental fairness includes: (1) consideration of the private interest at stake; (2) the risk of an erroneous deprivation of such interest through the procedures used; (3) the probable value of additional or substitute procedures; and (4) the interest of the state or government, including the function involved and the fiscal or administrative burdens imposed by substitute procedures. *Dobrzenski v Dobrzenski,* 208 Mich App 514, 515; 528 NW2d 827 (1995). In civil cases, due process generally requires notice of the nature of the proceedings, a meaningful time and manner to be heard, and an impartial decision maker. *Cummings v Wayne Co,* 210 Mich App 249, 253; 533 NW2d 13 (1995). The opportunity to be heard does not require a full trial-like proceeding. *Id.* However, it does require a hearing such that a party has the chance to learn of and respond to the evidence. *Id.*

Following review of the proceedings in the present case, the trial court correctly determined that defendants DFFA and DPCOA were deprived of due process when plaintiffs attempted to enforce the 12-member

pension board on the basis of an arbitration proceeding in which these unions were not given the opportunity to be heard and participate. *Id.* It is important to note that plaintiffs went to great lengths in their complaint to allege that the pension board composition was merely an instrumentality of the unions because a majority of the membership was slanted in favor of the unions. Plaintiffs' complaint asserted that the city was forced to allow "gain sharing" because of the threats of the union and that the pension system was *overfunded by millions of dollars* as a result, contrary to the recommendations of the actuary. Plaintiffs alleged that the application of the principle of parity to the unions that did not participate in the arbitration was nonetheless appropriate because, for years, the unions had filed suit to obtain parity of benefits given to other members. However, in this case *as alleged by plaintiffs*, the change in composition to the board would not be an economic benefit to the unions. Rather, plaintiffs asserted that the 12-member board composition was necessary to require the pension board to follow the recommendations of the actuary and to stop following the mandate of the union membership. Thus, in the present case, application of the 12-member pension board to defendants DFFA and DPCOA would result in a deprivation of due process of law because *benefits will be taken* from the unions without the benefit of any hearing or presentation of evidence before the arbitration panel. Moreover, by statute, MCL 423.321, defendant unions are prohibited from striking, but, in turn, are provided the benefit of compulsory arbitration to resolve their labor disputes. *Police Officers Ass'n v Ottawa Co Sheriff (On Reconsideration)*, 264 Mich App 133, 138; 694 NW2d 757 (2004). Mere application of an arbitration award rendered with regard to different parties deprives defendant unions of the statutory right of arbi-

tration that has been granted in exchange for the prohibition on labor stoppage. Therefore, the trial court did not err in holding that application of the arbitration award's 12-member board of trustees would result in a deprivation of due process to defendant unions because they were unable to participate in the arbitration proceeding involving another party.

IV. ACT 312[9]

MCL 423.231 provides for compulsory arbitration:

It is the public policy of this state that in public police and fire departments, where the right of employees to strike is by law prohibited, it is requisite to the high morale of such employees and the efficient operation of such departments to afford an alternate, expeditious, effective and binding procedure for the resolution of disputes, and to that end the provisions of this act, providing for compulsory arbitration, shall be liberally construed.

MCL 423.233 provides that, when a dispute is not resolved during the course of a mediation dispute, the parties may initiate binding arbitration proceedings. A delegate is selected by each party, the employer and the employees, for the binding arbitration. MCL 423.234. An arbitration panel is selected, the duties of the chairman of the arbitration panel are delineated, and anything deemed relevant by the arbitration panel may be received into evidence. MCL 423.235; MCL 423.236. The proceedings are informal, and the technical rules of evidence do not apply. *Id.* MCL 423.237 provides that

---

[9] Although we resolved the due process issue, the parties addressed the question on appeal in the context of an Act 312 proceeding and the principle of parity. Because of the manner in which the appeal has been briefed and because the application of Act 312 and the principle of parity has not been addressed in published case law, we will respond to the parties' concerns regarding these matters.

the arbitration panel may subpoena witnesses and may invoke the aid of the circuit court if necessary. The failure to obey orders of the circuit court may be punished as contempt.

Before the conclusion of the hearing, the arbitration panel identifies the economic issues in dispute, and the parties are directed to submit their last offer of settlement on the economic issues. MCL 423.238. "The determination of the arbitration panel as to the issues in dispute and as to which of these issues are economic shall be conclusive." *Id*. The arbitration panel then renders its findings. *Id*.

MCL 423.239 provides the factors on which the arbitration panel is to base its findings, opinion, and order. Specifically, the arbitration panel examines: the lawful authority of the employer; any stipulations by the parties; the interest and welfare of the public; the financial ability of the government to meet costs arising after the mediation; the comparison of wages, hours, and conditions of employment to public and private employment in comparable communities; the cost of living; overall compensation; and other factors normally taken into consideration when determining benefits. *Id*.

MCL 423.240 provides for a final and binding majority decision and circuit court enforcement:

A majority decision of the arbitration panel, if supported by competent, material, and substantial evidence on the whole record, shall be final and binding upon the parties, and may be enforced, at the instance of either party or of the arbitration panel in the circuit court for the county in which the dispute arose or in which a majority of the affected employees reside. The commencement of a new municipal fiscal year after the initiation of arbitration procedures under this act, but before the arbitration decision, or its enforcement, shall not be deemed to render a

dispute moot, or to otherwise impair the jurisdiction or authority of the arbitration panel or its decision. Increase in rates of compensation or other benefits may be awarded retroactively to the commencement of any period(s) in dispute, any other statute or charter provisions to the contrary notwithstanding. At any time the parties, by stipulation, may amend or modify an award of arbitration.

When an employee organization fails to obey enforcement by a circuit court, penalties are imposed. MCL 423.241. Review of the arbitration decision by the circuit court is limited:

Orders of the arbitration panel shall be reviewable by the circuit court for the county in which the dispute arose or in which a majority of the affected employees reside, but only for reasons that the arbitration panel was without or exceeded its jurisdiction; the order is unsupported by competent, material and substantial evidence on the whole records; or the order was procured by fraud, collusion or other similar and unlawful means. The pendency of such proceeding for review shall not automatically stay the order of the arbitration panel. [MCL 423.242.]

MCL 423.243 provides:

During the pendency of proceedings before the arbitration panel, existing wages, hours and other conditions of employment shall not be changed by action of either party without the consent of the other but a party may so consent without prejudice to his rights or position under this act.

After review of the complaint, the documentary evidence, and the arguments of the respective parties, the trial court properly granted the defense motion for summary disposition for lack of jurisdiction because plaintiffs did not seek mere enforcement of an arbitration award *on the parties*. See MCL 423.240. Rather, plaintiffs attempted to enforce the arbitration agreement against nonparties that did not participate in the proceedings. As previously indicated, an order of the

arbitration panel is reviewable in circuit court. MCL 423.242. However, the review is limited to determining whether the "arbitration panel was without or exceeded its jurisdiction; the order is unsupported by competent, material and substantial evidence on the whole record; or the order was procedure by fraud, collusion or other similar and unlawful means." *Id.*

In circuit court, plaintiffs did not seek review of the arbitration panel's decision involving the DPOA on the basis of the criteria set forth in MCL 423.242. Rather, plaintiffs asserted that the arbitration decision rendered in the case between plaintiff city and the DPOA could be applied to union defendants, the DFFA and the DPCOA. In support of this contention with regard to the DPCOA, plaintiffs alleged that a provision of the DPCOA agreement provided for the incorporation of the DPOA arbitration into the DPCOA agreement. That provision provides:

> 41(O) Future Pension Provisions Changes: "Effective July 1, 2001, and for the balance of the term of this Labor Agreement, bargaining unit members shall receive all pension changes received by Police Lieutenant represented by the DPLSA."

However, the rules of statutory and contract construction do not permit the trial and appellate courts to interpret sua sponte the contract of the parties. Statutory interpretation is reviewed de novo by the appellate courts. *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 196; 694 NW2d 544 (2005). The goal of statutory construction is to discern and give effect to the intent of the Legislature by examining the most reliable evidence of its intent—the words of the statute. *Id.* If the meaning is unambiguously expressed, no further judicial construction is required or permitted, and the statute must be enforced as written. *Id.* The

words of a statute are given their plain and ordinary meaning, and the plain and ordinary meaning can be ascertained by examining the dictionary definitions. *Id.* Similarly, the goal of contract construction is to determine and enforce the parties' intent on the basis of the plain language of the contract itself. *Old Kent Bank v Sobczak*, 243 Mich App 57, 63; 620 NW2d 531 (2001). If the terms of a contract are subject to two or more reasonable interpretations, a factual development occurs for which it is necessary to determine the intent of the parties. *SSC Assoc Ltd Partnership v Detroit Gen Retirement Sys*, 192 Mich App 360, 363; 480 NW2d 275 (1991). A term of a contract can be interpreted in accordance with the commonly used meanings. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1999).

Plaintiffs' citation of the terms of the collective bargaining agreement involving the DPCOA falls outside the parameters of review by the circuit court. The rules of statutory and contract construction prohibit the relief that plaintiffs seek. The plain language of the statute governing court review of an arbitration decision is limited to an examination of jurisdiction, an examination of the evidence to determine whether the holding was supported by competent, material, and substantial evidence on the whole record, and an examination of whether fraud or collusion caused the award. MCL 423.241; see *Echelon, supra* at 197. Instead, plaintiffs requested that judicial review by the trial and appellate courts involve examination of the terms of the collective bargaining agreement and a determination that "all pension changes" received by one entity must be imposed on another union. However, the term "all pension changes" is not defined in the contract. Moreover, the DPCOA was not a party to the arbitration award at issue. Consequently, it was unable to submit to

the arbitration panel the questions whether a change to the pension board composition was an economic or noneconomic change and whether the reference to "all pension changes" encompasses monetary awards as well as board composition. Moreover, the arbitration panel did not have the DPCOA contract before it. Therefore, the panel did not make an assessment of the definition of "all pension changes" in that particular contract or render a determination regarding whether a change to the composition of the pension board fell within the term "all pension changes."

Under the circumstances, the trial court properly granted summary disposition in favor of defendant DPCOA. The issue before the circuit court was not whether the arbitration panel decision was supported by competent, material, and substantial evidence on the whole record. Rather, the circuit court was asked to construe the terms of the DPCOA's collective bargaining agreements in relation to an unrelated arbitration proceeding in which the DPCOA did not participate.

Plaintiffs also allege that the trial court erred in failing to apply the 12-member pension board to the DFFA agreement. Once again, plaintiffs requested that this Court apply the Act 312 arbitration decision between plaintiff city and the DPOA to defendant DFFA. However, defendant DFFA did not participate in that Act 312 decision. By statute, review of the arbitration award is strictly limited to three circumstances, none of which was raised by plaintiffs. MCL 423.242. As previously stated, plaintiffs do not ask this Court to examine the content of the award on its face and determine that the composition of the board changed with regard to the DFFA. Rather, plaintiffs ask this Court to examine the content of the DFFA agreement and conclude that the provisions of the arbitration award should be applied to the DFFA agree-

ment. This exceeds the authority granted for court review of an Act 312 arbitration. MCL 423.242.

We note that the collective bargaining agreement between the city and the DFFA has been submitted for review. Although the agreement refers to "parity" with regard to benefits and wages, there is no indication that "parity" would even be applied to the composition of the membership of the pension board. Section 21 of the agreement delineates the membership of the board of trustees of the pension board and provides for 11 members. It contains no discussion of the principle of parity in relation to pension board membership. Section 22 is separately entitled "Economic Provisions" and § 14 of this provision addresses pensions. It provides, in relevant part:

> For members having a parity relationship with the DPOA and the DPCOA, Unit I, beginning July 21, 2000, a member who has elected to retire and elected to withdraw his/her annuity for the purposes of calculating his/her retirement allowance (thereby lowering the retirement allowance), may nevertheless choose to leave the annuity in the Retirement System collecting regular annuity interest with the option of a one-time withdrawal of the annuity funds at a later date.

Thus, while the DFFA agreement referenced the composition of the pension board and, while the pension provisions referred to parity, there is no indication that the DFFA contemplated that the composition of the pension board could be altered its contract on the basis of parity.

Plaintiffs also allege that schedule I of the DFFA agreement refers to parity. Indeed, it does. However, once again, it refers to parity in terms of comparing the salaries of police officers and fire fighters who have achieved the same rank. There is no indication that this

schedule put defendant the DFFA on notice that the composition of the pension board could be altered on the basis of parity when an Act 312 decision was rendered for another union. As an example, schedule I provides:

> A. Traditional police-fire pay parity means that the full time Police Officer and the full time Fire Fighter, whose base salaries are the same, will experience identical salary rate changes with identical effective dates throughout the fiscal year so that the total base pay of a Police Officer is equal to that of a Fire Fighter in any fiscal year covered by this Agreement. Similarly, the Fire Sergeant and Fire Engine Operator have parity with the Police Investigator, the Fire Lieutenant has parity with the Police Sergeant, the Fire Captain with the Police Lieutenant, the Battalion Fire Chief with the Police Inspector, and the Chief of Fire Department with the Deputy Chief-West Operations.

Thus, the text of the DFFA agreement does not contemplate that parity would be applied to the composition of the pension board. It merely equalizes the pay levels of comparable employees given different titles in the police and fire departments. Consequently, plaintiffs inappropriately attempted to impose the Act 312 arbitration award involving the DPOA onto defendant DFFA. That award does not govern the DFFA, and the provisions cited as a basis to apply the award to the DFFA do not contemplate a change in the composition of the board. Therefore, plaintiffs' request for summary disposition was simply without statutory or contractual support.

While there is no authority exactly on point, the following decision is noteworthy. In *Detroit v Michigan Council 25, AFSCME*, 118 Mich App 211; 324 NW2d 578 (1982), the city council approved an ordinance that changed the composition of the board of trustees for the policemen and firemen retirement system as well as the general retirement system unilaterally without prior bargaining with the affected labor unions. After the

unilateral changes were made, charges were filed by the affected labor organizations with MERC. MERC concluded that the composition of the board was a mandatory subject of bargaining. This Court examined whether it was a permissive or mandatory subject because it controlled whether the city engaged in an unfair labor practice.

This Court stated:

> The public employment relations act (PERA), MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.*, imposes upon public employers the duty to bargain with respect to "wages, hours and other terms and conditions of employment * * * ." Subjects falling within these terms are called mandatory subjects of bargaining. Michigan cases have adopted a broad, expansive approach to determining whether a particular subject may be classified as a mandatory subject of bargaining. The approach fosters protection of public employees' rights, because those employees are forbidden to strike under § 2 of PERA.

> Determination of what are mandatory subjects of bargaining is done on a case-by-case basis. The test generally applied is whether the matter has a significant impact upon wages, hours, or other conditions of employment, or settles an aspect of the employer-employee relationship.

> \* \* \*

> In the case at bar, the powers of the board of trustees are substantial and have a significant effect upon the conditions of employment. They include the power to determine whether employees are totally disabled as a result of their performance of city work so as to entitle them to the increased benefits provided under duty disability pensions. Similarly, the boards of trustees determine whether employees are totally disabled due to nonduty disability, entitling them to early and substantial pension benefits. The boards of trustees as well determine whether an employee's beneficiaries are entitled to accident death benefits for death while in city service and determine whether retirees on disability pension need reexamination or are subject to revocation of their pension if their physical

condition has improved. Under specific provisions of the new city code, the boards of trustees also compute the city's contribution liability to the fund, for which the mayor and council must appropriate sufficient funds. Finally the boards of trustees determine the investment of funds, which in the long run determines the amount of benefits, amount of city contributions, and amount of employee contributions. [*Michigan Council 25, supra* at 215, 218-219 (citations deleted).]

Applied to this case, plaintiffs' position is simply without merit. To determine whether a provision is a mandatory subject of bargaining, the test is whether the matter has a significant effect on wages, hours, or other conditions of employment, or settles an aspect of the employer-employee relationship. In the present case, by virtue of the allegations contained in the complaint, the composition of the pension board has a significant effect on employee benefits. Plaintiffs alleged that the composition of the board has caused a surplus in the fund to the detriment of plaintiff city. Thus, plaintiffs contended that the change in the composition of the pension board was necessary to prevent the extraction of city funds into the pension system. Thus, this is a mandatory bargaining subject. It is inappropriate to request that this Court construe the other bargaining agreements that an arbitration panel has not examined and render a decision when defendant unions have not had the opportunity to address the issue of the composition of the pension board.

V. ORDER DENYING RECONSIDERATION[10]

Lastly, plaintiffs allege that the trial court erred in

[10] Plaintiffs also alleged that the trial court erred in failing to hold that defendant unions improperly changed the existing terms and conditions of employment. However, this issue was not raised, addressed, or decided in the trial court. *Miller v Inglis*, 223 Mich App 159, 168; 567 NW2d 253 (1997). Therefore, we do not address it.

concluding that there could not be two boards, and any statement along that line was obiter dictum, which lacked the force of adjudication. On the basis of the rules governing summary disposition and motions for reconsideration, we cannot conclude that the trial court erred. Summary disposition decisions are reviewed de novo. *Capuzzi, supra.* The moving party here had the initial burden of supporting its claim to summary disposition by affidavits, depositions, admissions, or other documentary evidence. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The burden then shifted to the nonmoving party to demonstrate a genuine issue of disputed fact existed for trial. *Id.* To meet this burden, a nonmoving party must present documentary evidence establishing the existence of an issue of material fact, and the motion is properly granted if this burden is not satisfied. *Id.* Affidavits, depositions, and documentary evidence offered in support of and in opposition to a dispositive motion shall be considered only to the extent that the content or substance would be admissible as evidence. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). This Court reviews a trial court's decision regarding a motion for reconsideration for an abuse of discretion. *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000). "An abuse of discretion exists when the result is so palpably and grossly violative of fact and logic that it evidences perversity of will or the exercise of passion or bias rather than the exercise of discretion." *Id.* MCR 2.119(F)(3) provides:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled

and show that a different disposition of the motion must result from correction of the error.

"We find no abuse of discretion in denying a motion [for rehearing or reconsideration] resting on a legal theory and facts which could have been pled or argued prior to the trial court's original order." *Charbeneau v Wayne Co Gen Hosp*, 158 Mich App 730, 733; 405 NW2d 151 (1987).

The trial court did not abuse its discretion in denying the motion for reconsideration. See *Churchman, supra* at 233. After the motion was heard, plaintiffs submitted an affidavit and documentary evidence to support the allegation that two existing pension boards could function. Because of the timing of the submission of the materials, defendants did not have the opportunity to rebut the allegations contained within the affidavit. Moreover, plaintiffs failed to proffer any reason the documentary evidence was not presented at the time of the hearing on the cross-motions for summary disposition. *Id.* Therefore, the trial court did not abuse its discretion by denying plaintiffs' motion for reconsideration.

Although the trial court properly granted summary disposition in favor of defendants, the written order contained the following provision:

> It is further ordered that the composition of the Board, as set out in this Order, cannot be modified until such time as each of the four (4) collective bargaining agents, the Detroit Police Officers Association, the Detroit Police Lieutenants and Sergeants Association, the Detroit Police Command Officers Association, and the Detroit Fire Fighters Association, uniformly agree to any change to the composition of the Board[.]

On review of the record available, this written order did not comport with the trial court's oral ruling on the

record. Additionally, this portion of the order rendered a decision with regard to parties that were not joined in the litigation. There is no indication in the lower court record that the cases involving the DPOA and the DPLSA were consolidated with this litigation, although pleadings from different legal actions in the lower court were submitted as appendices to briefs in this appeal. Accordingly, we remand for review of the propriety of the inclusion of this provision in the order granting summary disposition.[11]

Affirmed with regard to the trial court's grant of summary disposition, but remanded for review of the terms of the order granting summary disposition. We do not retain jurisdiction.

R.S. GRIBBS, J., concurred.

COOPER, P.J. (*concurring*). I agree with the majority that we should affirm the trial court's order granting summary disposition in defendants' favor. I write separately, however, as I do not want any of the gratuitous comments in the majority's lengthy analysis to be considered rulings or dicta in this case. The resolution of this case is, in fact, very simple—we do not have jurisdiction. Therefore, this Court must enter a clear

---

[11] We remand because the lower court record is unclear about whether there was a consolidation of parties in this action. Moreover, the language of the order arguably trumps any Act 312 decision. The language of the order provides that there will be no change in the board until there is uniform agreement. On the contrary, if this issue is bargained and proceeds to be decided in an Act 312 arbitration, the change can be compelled if it is upheld in the circuit court. Moreover, there are other methods of obtaining a 12-member board short of "agreement" by all four unions. Accordingly, on remand, the trial court should determine whether this portion of the order comports with the oral ruling, the parties joined in the litigation, and the requirements of an Act 312 arbitration ruling.

and affirmative order remanding this dispute for grievance arbitration that includes the union defendants.

Our review of an arbitration award is very limited. As noted by the majority, we may only examine jurisdictional issues; review the evidence to determine whether the arbitrator's order was supported by competent, material, and substantial evidence on the record; and determine whether the award was procured by fraud or collusion.[1] Plaintiffs asked the trial court, and this Court on review, to interpret undefined terms and provisions in the DPCOA and DFFA collective bargaining agreements, including the parity provisions. However, those interpretations are within the purview of a 1969 PA 312 arbitration. No other comment is necessary.

I also agree with the majority that we must remand to allow the trial court to clarify its order granting defendants' motion for summary disposition. While inartfully worded, it appears that the trial court intended to impose a restraining order to prevent the modification of the board composition without an agreement among all affected parties or a resolution from the arbitration panel.

---

[1] See MCL 423.241.