William Marchant, Jerome Chodorov and Joseph Fields, Plaintiffs-Appellees, v. Artists Embassy, Inc. and Jackie Productions, Inc. and Harris and Selwyn Theatres, Inc. and Herbert R. Ries, Garnishees Defendants, and United States of America, Intervenor-Appellant.

Gen. No. 47,903.

First District, Third Division.

April 14, 1960.

Charles K. Rice, Assistant Attorney General; Lee A. Jackson, A. F. Prescott, Louise Foster, Attorneys, Department of Justice, Washington, D. C.; Robert Tieken, United States Attorney, Chicago, for intervenor-appellant.

Hubert L. Will, N. A. Giambalvo, Joseph Schneider, and Nelson, Boodell & Will, all of Chicago, for appellees.

PRESIDING JUSTICE BRYANT delivered the opinion of the court.

This is an appeal by intervenor-appellant United States of America, hereinafter referred to as U. S., from a judgment of the trial court against the garnishee defendants and the dismissal of the complaint in intervention. Judgment was entered against the garnishee defendants, Harris and Selwyn Theatres, Inc. and Herbert R. Ries, in the amount of $8,700.

A chronological statement of the events leading to this result is as follows:

On May 9, 1957, plaintiffs-appellees filed an attachment suit against Artists Embassy, Inc. and Jackie Productions, Inc., residents of California. The same day, an attachment writ was served upon the garnishee defendants, Harris and Selwyn Theatres, Inc. and Herbert R. Ries.

On September 23, 1957, the District Director of Internal Revenue in Los Angeles, California, signed an assessment list showing a tax deficiency against Jackie Productions, Inc., one of the principal defendants.

On November 5, 1957, a judgment against the principal defendants, Artists Embassy, Inc. and Jackie Productions, Inc., was entered in the Circuit Court of Cook County in the amount of $8,700.

On January 3, 1958, the federal tax lien covering the deficiency of Jackie Productions, Inc. was filed in the Recorder's Office of Cook County.

Garnishee defendants answered the attachment writ by indicating that they held no funds due the principal defendants. After the judgment was rendered against the principal defendants, a trial was had on the question of what funds were being held by the garnishee defendants. The U. S. had filed its lien against Jackie Productions, Inc. in the Recorder's Office and was allowed to intervene in the proceedings.

The trial resulted in a judgment against the garnishee defendants and a dismissal of the complaint in intervention by the U. S. The court found that the garnishee defendants had funds belonging to the principal defendants, that the plaintiffs-appellees acquired a lien upon such funds when the attachment writ was served and that the lien was perfected when the judgment was entered against the principal defendants on November 5, 1957. As a result, the lien of the plaintiffs-appellees was held to be paramount and superior to the interest, rights and lien of the U. S. as intervenor.

The U. S. here appeals from this judgment and maintains that plaintiffs-appellees had only a contingent claim on the fund held by the garnishee defendants until the judgment of March 13, 1959, against the garnishee defendants and such claim could not be considered a lien even then until delivery of a writ of execution on that judgment. It is contended that the lien of the U. S. was protected from the time that the tax assessment was made in California against Jackie Productions, Inc.

Section 6321 of the Internal Revenue Code of the United States (1954), provides in substance that a lien shall arise in favor of the United States upon the property of any person liable for taxes who has refused or neglected to pay such tax after demand. This is the section which the U. S. contends is applicable to the present situation.

Section 6322 provides that the lien created by section 6321 arises when the assessment is made and continues until the liability is satisfied or becomes unenforceable by lapse of time.

Section 6323 provides that the lien imposed by section 6321 is not superior to that of a judgment creditor until notice thereof has been filed in the office designated for the filing of such notices by the state in which the property is located. Appellees claim to be within the provisions of this section in that they became a judgment creditor when the judgment was rendered against the principal defendants, which was before the U. S. recorded its lien.

Since the U. S. did not file its tax lien, which arose pursuant to the provisions of section 6321 upon the filing of its tax assessment in California, until after the judgment against the principal defendants, the question for decision is whether the judgment against the principal defendants gave to plaintiffs a perfected lien, for they would have to have a perfected lien to qualify as a judgment creditor under the provisions of section 6323. Ersa, Inc. v. Dudley, 234 F.2d 178 (CCA 3rd 1956).

 The priority, relative to other liens, of a lien of the United States for unpaid taxes always involves a federal question, which is to be determined by the federal courts. United States v. Security Trust & Savings Bank, 340 U. S. 47, 49–50; 71 S. Ct. 111 (1950). But there is no priority upon the type of federal tax

lien here involved, and first in time is first in right. United States v. New Britain, 347 U. S. 81, 84–85, 74 S. Ct. 367 (1954). The lien must be specific and perfected to be acknowledged as first in time. The federal courts use as a criterion for determining when a lien is perfected the state determination of the point at which there is nothing further to be done to have a completed lien—when the identity of the lienor, the property subject to the lien and the amount of the lien are established. United States v. New Britain, supra. The characterization of a lien as perfected by the state court is practically conclusive on the federal courts. Spokane County v. United States, 279 U. S. 80, 95; People of State of Illinois ex rel. Gordon v. Campbell, 329 U. S. 362, 371; United States v. Security Trust & Savings Bank, supra.

We turn, then, to a consideration of the Illinois law to determine when the lien in the instant case became specific and perfected.

The U. S. contends that under the law of Illinois the attachment lien is not perfected by a judgment against the principal defendant, but remains inchoate until there is a judgment against the garnishee. If this were the case, the lien of the U. S. would be superior as having been filed before the attachment lien was perfected. United States v. Acri, 348 U. S. 211.

However, contrary to the government's contention, we find that the attachment lien was perfected when the judgment was rendered against the principal defendant. The office of an attachment is to seize and hold the property of the defendant until the rights of the parties are determined in the suit in which the writ is issued. Gibson v. The People, 122 Ill. App. 217. The judgment in the garnishee defendant suit relates back to the original writ of attachment but those who are entitled to share in the proceeds

445

from the garnishment suit are determined as of the time of judgment against the principal defendant. Smith v. Clinton Bridge Co., 13 Ill. App. 572. The court may look into the title of the property attached, but the judgment in the action against the principal defendant is not dependent upon the outcome of the attachment suit. Juilliard & Co. v. May, 130 Ill. 87; Cermak v. Schaaf, 224 Ill. App. 351, affirmed 308 Ill. 61. It is only the judgment lien, and not the attachment lien, which can be enforced against the property attached, but the latter remains effectual for the purposes of preserving a priority of lien, and may be referred to for purposes of identification. Pease v. Frank, 263 Ill. 500, 509. The question, until the judgment is obtained against the principal defendants, is whether the attachment lien can rightfully be said to attach to any property to which the principal defendants are entitled. Once that judgment is entered and that question is decided, the lien is perfected against whatever the principal defendants are entitled to in the hands of others. The question in regard to the attachment-garnishee defendants is only as to the amount of the principal defendant's property they now hold. Whatever it is, it is subject to the lien. The judgment against the attachment-garnishee defendants is merely a determination of how much, if any, of the principal defendant's assets they hold for the benefit of the plaintiffs as substituted creditors. The purpose of the initial attachment writ is to inform the attachment-garnishee defendant that any funds in his hands may become payable to someone other than his original creditor. When the plaintiff obtains a judgment that he is entitled to assets of the principal defendant, the funds have become payable to someone other than the original creditor and the attachment has become definite. The subsequent trial to deter-

mine the extent of the funds held by the attachment-garnishee defendant has no effect on the validity of the lien on those funds.

The cases relied upon by the U. S. are not contrary to this holding. The doctrine of "relation back," by which an attachment would be superior to a tax lien and relate back to the date of the writ of attachment when the tax lien was filed subsequent to the attachment but prior to the judgment against the principal defendant, condemned in federal decisions (United States v. Security Trust & Savings Bank, supra), is not involved in the instant case. United States v. Waddell, Holland & Flinn, 323 U. S. 353 involved a statutory provision giving a clear priority to the lien of the United States after an assignment of property by an insolvent debtor. The case only dealt with whether an exception to the priority granted by Congress could be said to apply when a lien considered perfected by the state granting it existed at the time of the insolvency. Nor are the other cases mentioned determinative of the question sought to be answered.

Appellant also contends that the lien could not have been perfected because no execution had issued on the judgment against the principal defendants. In an attachment suit, the attachment is the basis for the execution and there was no need for an execution to issue in both phases of the case. The defendants knew of the judgment against them and could reasonably be expected to have realized that the plaintiffs would take all available avenues of enforcement. If they had property other than that already attached, they could have submitted it to the payment of the debt, which would achieve the same result as the execution, in that there would then have been no payment by the garnishees. There was an execution order in the garnishment judgment and it was unnecessary for the preservation of the lien that there be execution against the

principal defendants. The attachment action is not separate and distinct, but is in aid of the original suit.

For the reasons indicated, the judgment and order of the trial court is affirmed.

Affirmed.

BURKE and FRIEND, JJ., concur.