NOTICE

Decision filed 08/10/10. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-09-0407

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| FIRST MID-ILLINOIS BANK & TRUST, N.A., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 07-L-1057 |
| | ) | |
| PATRICK A. PARKER and STEVEN F. GARDNER, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Four S, LLC, Garnishee, and First Bank, MDB | ) | Honorable |
| Electric, Inc., and Regal Sales, Inc., Third-Party | ) | Nelson Metz, |
| Claimants-Appellees). | ) | Judge, presiding. |

_____

JUSTICE WEXSTTEN delivered the opinion of the court:

First Mid-Illinois Bank & Trust, N.A. (Mid-Illinois Bank), brought this action against the defendants, Patrick A. Parker and Steven F. Gardner, to enforce guaranties for the payment of promissory notes, and the circuit court entered a judgment against Parker and Gardner. Four S, LLC (Four S), an Illinois limited liability company in which Parker and Gardner owned membership interests, was joined to enforce the judgment. MDB Electric, Inc. (MDB), Regal Sales, Inc. (Regal), and First Bank, additional judgment creditors also attempting to enforce judgments against Parker's and Gardner's distributional interests in Four S, were further joined. The circuit court entered a summary judgment adjudicating the validity and priority of the liens claimed by the judgment creditors. We reverse and remand.

BACKGROUND

Mid-Illinois Bank

On December 13, 2007, Mid-Illinois Bank filed its complaint against Parker and

1

Gardner to collect on guaranties of promissory notes executed by Prime Development, Inc., Pinehurst Development, LLC, and GSP Enterprises, Inc. On January 8, 2008, Mid-Illinois Bank filed a motion for a prejudgment attachment pursuant to section 4-101 of the Code of Civil Procedure (Code) (735 ILCS 5/4-101 (West 2006)) against Parker's and Gardner's "property interests" and requested the court to require Four S, as the garnishee, to answer interrogatories. In an attached affidavit, Patti Wilson, Mid-Illinois Bank's community bank president, stated that she believed that Parker and Gardner were about to fraudulently conceal, assign, or otherwise dispose of their property so as to hinder or delay their creditors. See 735 ILCS 5/4-101(8) (West 2006). On the same date, the circuit court entered an attachment bond, an order for an attachment, and a summons, which were served on January 9, 2008, and thereby ordered that Gardner's and Parker's distributional interests in Four S be attached.

On April 18, 2008, the circuit court entered a summary judgment in favor of Mid-Illinois Bank and against Gardner and Parker on the issue of liability. On May 2, 2008, the circuit court determined damages and entered a judgment in favor of Mid-Illinois Bank for $3,524,987.36. Thereafter, the circuit court entered citation notices and citations to discover assets.

On June 6, 2008, on Mid-Illinois Bank's application, the court entered a charging order pursuant to the Limited Liability Company Act (805 ILCS 180/30-20 (West 2006)). The circuit court charged Parker's and Gardner's distributional interests in Four S to satisfy the judgment entered on May 2, 2008, thereby imposing liens in favor of Mid-Illinois Bank against the respective distributional interests of Parker and Gardner in Four S "effective as of the date of attachment of their respective interests on January 9, 2008," and ordering the foreclosure of those liens by judicial sale unless the judgment entered against Gardner and Parker on May 2, 2008, was satisfied by July 7, 2008.

2

On July 9, 2008, Mid-Illinois Bank filed a motion to enforce the charging order. In this motion, Mid-Illinois Bank argued that the judgment against Parker and Gardner remained unsatisfied and requested a judicial sale of the distributional interests in Four S, pursuant to the charging order entered on June 6, 2008. Mid-Illinois Bank also requested that the circuit court order Four S to identify third parties which might claim a lien in Gardner's and Parker's distributional interests and to require any third party so identified by Four S to appear and maintain its claim.

On August 8, 2008, the circuit court entered a supplemental order, noting that the May 2, 2008, judgment remained unsatisfied. The court ordered Four S to identify third parties that had asserted a written claim of a lien, attachment, or garnishment on the distributional interests of Parker or Gardner. The court ordered that the proceeds of the sale be distributed in the following order: (1) the plaintiff's cost of advertising and attorney fees, (2) payment on the judgment and to the third-party claimants, in the order determined by the court, and (3) the surplus to Parker and Gardner.

On August 15, 2008, Four S filed a memorandum in compliance with the court's August 8, 2008, order, identifying First Bank (First Bank v. Southcrest Development, Inc., Gardner, & Parker, No. 06-CH-1287 (December 7, 2006)), along with MDB and Regal (MDB Electric, Inc. & Regal Sales, Inc. v. Prime Development, Inc., Gardner, & Parker, No. 06-L-1041 (February 25, 2008)), as parties that had asserted a written claim of a lien, attachment, or garnishment on Parker's and Gardner's distributional interests in Four S.

First Bank

On September 19, 2008, First Bank entered its appearance and filed a statement of claim pursuant to the August 8, 2008, order. In its claim, First Bank asserted and attached exhibits showing the following.

On December 7, 2006, First Bank filed its complaint seeking a judgment against

3

multiple defendants, including Parker and Gardner, pursuant to guaranty agreements executed on August 13, 2004. On the same date, Parker and Gardner confessed a judgment under the complaint and agreed that a judgment be entered against each of them individually for $2,050,787.77. First Bank v. Southcrest Development, Inc., Gardner, & Parker, No. 06-CH-1287 (December 7, 2006). On February 5, 2007, the clerk of the court for Madison County issued a third-party citation to discover assets, which was served on Four S on March 29, 2007. On April 4, 2007, at a hearing on the citation (along with other citations and third-party citations), the court ordered that all previously issued citations were to remain in full force and effect.

First Bank argued that its continuing lien on the property from Four S attached on March 29, 2007, when the citation was served and thus was in priority of distribution to Mid-Illinois Bank's lien.

MDB Electric, Inc., and Regal Sales, Inc.

On November 14, 2008, MDB and Regal filed their entries of appearance and statement of claim pursuant to the August 8, 2008, order. In their statement, MDB and Regal asserted the following.

MDB and Regal filed a lawsuit against Gardner and Parker, and on January 15, 2008, the circuit court entered a judgment, modified by a supplemental judgment on February 25, 2008, in favor of MDB and Regal and against Gardner and Parker, awarding MDB $82,272.48 and awarding Regal $18,804. MDB Electric, Inc. & Regal Sales, Inc. v. Prime Development, Inc., Gardner, & Parker, No. 06-L-1041 (February 25, 2008). On May 23, 2008, the circuit court entered an order granting MDB's and Regal's motion for a charging order. The court reserved the issue of the priority of the claims of MDB, Regal, and First Bank, which had entered its appearance in the action.

4

Mid-Illinois Bank's Motion for a Summary Judgment

On October 20, 2008, before MDB and Regal filed their entries of appearance and statement of claim, Mid-Illinois Bank filed a motion for a summary judgment. In this motion, Mid-Illinois Bank argued, *inter alia*, that a charging order entered pursuant to section 30-20 of the Limited Liability Company Act (805 ILCS 180/30-20 (West 2006)) constituted the exclusive means by which a judgment creditor may obtain satisfaction of a judgment out of a judgment debtor's distributional interest in an Illinois limited liability company. On December 30, 2008, Mid-Illinois Bank filed a brief in support of its motion for a summary judgment, arguing that its lien arising under the court's charging order was superior to First Bank's claim based on a citation to discover assets.

On January 20, 2009, MDB and Regal filed a brief in support of their statement of claim and in response to Mid-Illinois Bank's motion for a summary judgment. In their brief, MDB and Regal also argued that section 30-20 provided the only process by which a judgment creditor can enforce and satisfy its judgment against a member's distributional interest in a limited liability company (805 ILCS 180/30-20 (West 2006)) and that, therefore, Mid-Illinois Bank's attachment, like First Bank's citation, had no force or effect against Parker's and Gardner's interests in Four S. MDB and Regal argued that Mid-Illinois Bank's charging order did not relate back to the date it obtained a prejudgment attachment and that, therefore, MDB's and Regal's charging order had priority over Mid-Illinois Bank's charging order because it was entered prior in time.

On June 1, 2009, the circuit court entered an order prioritizing the claims of Mid-Illinois Bank, First Bank, MDB, and Regal against the distributional interests of Parker and Gardner in Four S. The circuit court concluded that Mid-Illinois Bank, MDB, and Regal, having obtained charging orders, had, pursuant to statute, obtained liens against Parker's and Gardner's distributional interests in Four S and that First Bank, having failed to obtain a

5

charging order, obtained no lien. The circuit court further concluded that because the Limited Liability Company Act provided that the charging order, as opposed to an attachment or enforcement procedure, constituted a lien against a member's distributional interests, Mid-Illinois Bank's lien was not effective as of the date of its prejudgment attachment order. Instead, the court concluded, as corrected in a June 29, 2009, order, that the priority of the liens on Parker's and Gardner's distributional interests in Four S was as follows: "first, MDB *** and Regal *** with equal priority, and second, *** Mid-Illinois Bank ***." The court expressly found no just reason to delay the enforcement or appeal of its order (see 210 Ill. 2d R. 304(a)).

On July 28, 2009, Mid-Illinois Bank filed its notice of appeal. On July 28, 2009, First Bank also filed its notice of appeal; however, on March 3, 2010, First Bank notified this court that it did not intend to file an appellate brief in this case.

ANALYSIS

Mid-Illinois Bank claims that the circuit court improperly entered a summary judgment favoring MDB and Regal because its charging order/lien had priority over MDB's and Regal's charging order/lien because it related back to the prejudgment attachment order entered on January 8, 2008. MDB and Regal argue that the Limited Liability Company Act (805 ILCS 180/1-1 *et seq.* (West 2006)), not the Code (735 ILCS 5/1-101 *et seq.* (West 2006)), provides the exclusive remedy by which a judgment creditor of a member may satisfy a judgment out of the debtor's distributional interest in an Illinois limited liability company and that their May 23, 2008, charging order was perfected prior in time and, thus, in priority of distribution to the lien of Mid-Illinois Bank, whose charging order was not entered, and therefore not perfected, until June 6, 2008.

A summary judgment is properly granted if the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue of material fact and that the moving

6

party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006); *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 245 (2007). Because a summary judgment is a drastic means of disposing of a case, we construe the record strictly against the moving party and liberally in favor of the nonmoving party. *Murray*, 224 Ill. 2d at 245-46. "Whether the trial court properly granted summary judgment is a question of law that we review *de novo*." *Happel v. Wal-Mart Stores, Inc.*, 316 Ill. App. 3d 621, 625 (2000), *aff'd*, 199 Ill. 2d 179 (2002).

"The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent." *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 40 (2001). "A court, therefore, first looks to the language of the statute, which is the most reliable indication of the objectives of the legislature in enacting a particular law." *Burger*, 198 Ill. 2d at 40. "The language of the statute must be afforded its plain and ordinary meaning, and, where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction." *Burger*, 198 Ill. 2d at 40. "In construing a statute, all of the provisions of an enactment are to be viewed as a whole." *Burger*, 198 Ill. 2d at 40. "Words and phrases should not be construed in isolation[] but are interpreted in light of other relevant provisions of the statute." *Burger*, 198 Ill. 2d at 40. "Courts may presume that the General Assembly, in enacting the legislation, did not intend absurdity, inconvenience[,] or injustice." *Burger*, 198 Ill. 2d at 40.

"A court presumes that the legislature intended that two or more statutes which relate to the same subject are to be read harmoniously so that no provisions are rendered inoperative." *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 458-59 (2002). "Statutes relating to the same subject must be compared and construed with reference to each other so that effect may be given to all of the provisions of each if possible." *Knolls Condominium Ass'n*, 202 Ill. 2d at 459. However, when a general statutory provision

7

conflicts with a specific statutory provision, either in the same or in another act, and both relate to the same subject, the specific provision controls and should be applied. *Knolls Condominium Ass'n*, 202 Ill. 2d at 459; *Newland v. Budget Rent-A-Car Systems, Inc.*, 319 Ill. App. 3d 453, 459 (2001).

Section 4-101 of the Code provides that a creditor having a money claim may have an attachment against the property of his debtor either at the time of the commencement of the action or thereafter, when the claim exceeds $20 and 1 of 11 circumstances, such as when the debtor is about to fraudulently dispose of his property so as to hinder or delay his creditors, is evident. 735 ILCS 5/4-101 (West 2006). The order for the attachment shall be directed to the sheriff and order the officer to attach so much of the defendant's estate, found in the county, as shall be of value sufficient to satisfy the debt and costs, according to the affidavit filed by the plaintiff, or if specific property is described in the order, then the officer shall attach the described property only. 735 ILCS 5/4-110 (West 2006). "Such estate or property shall be so attached in the possession of the officer to secure, or so to provide, that the same may be liable to further proceedings thereupon, according to law." 735 ILCS 5/4-110 (West 2006). "The officer serving the order for attachment shall take and retain the custody and possession of the property attached, to answer and abide by the judgment of the court, unless the person in whose possession the same is found shall enter into bond and security to the officer, *** with condition that the estate and property shall be forthcoming to answer the judgment of the court in the action." 735 ILCS 5/4-119 (West 2006).

The sheriff shall summon persons mentioned in the order for the attachment as garnishees and all other persons whom the creditor shall designate as having property in their possession or power, belonging to the defendant, the same as if their names had been inserted in the order for the attachment. 735 ILCS 5/4-126 (West 2006). Persons so summoned shall be considered as garnishees, who shall thereafter hold property in their possession belonging

8

to the defendant subject to the court's order in the proceeding and shall not pay to the defendant any indebtedness owed to him subject to that order.  735 ILCS 5/4-126 (West 2006); *Peter Fischer Import Motors, Inc. v. Buckley*, 121 Ill. App. 3d 906, 910 (1984) (an action wherein the plaintiff attempts to hold the defendant's property in the possession of a third party pending the disposition of the plaintiff's principal claim against the defendant is a prejudgment proceeding in attachment).  "[S]uch property, effects, choses in action, credits[,] and debts shall be considered to have been attached and the plaintiff's claim to have become a lien thereon pending such action."  735 ILCS 5/4-126 (West 2006).  "The property attached may be levied upon by judgment entered in the attachment action *** and shall be sold as other property levied upon for the enforcement of a judgment for the payment of money."  735 ILCS 5/4-141 (West 2006).

"The Illinois Limited Liability Company Act ***, enacted in 1994 and codified at 805 ILCS 180/1-1 *et seq.*, authorizes a hybrid form of business organization which permits its members to avail themselves of tax benefits similar to a partnership and of limited liability similar to the corporate form."  *In re LaHood*, No. 07-81727, slip op. at 8 (Bankr. C.D. Ill. March 19, 2009).  Where a limited liability company is member-managed, a member may transfer a distributional interest entitling the transferee to receive the distributions that would have been made to the transferor, but the Limited Liability Company Act does not entitle the transferee to become or to exercise any rights of a member, unless the operating agreement so specifies or all the other members consent.  805 ILCS 180/30-1(b), 30-5, 30-10(a) (West 2006).

Section 30-20 of the Limited Liability Company Act sets forth the procedure that a judgment creditor of a member must follow to execute a judgment and obtain a lien against a member's distributional interest in a limited liability company.  805 ILCS 180/30-20 (West 2006); see also 805 ILCS 180/1-5 (West 2006) ("distributional interest" is defined as "a

member's interest in distributions by the limited liability company"). Section 30-20 provides as follows:

"(a) On application by a judgment creditor of a member of a limited liability company or of a member's transferee, a court having jurisdiction may charge the distributional interest of the judgment debtor to satisfy the judgment. The court may appoint a receiver of the share of the distributions due or to become due to the judgment debtor and make all other orders, directions, accounts, and inquiries the judgment debtor might have made or which the circumstances may require to give effect to the charging order.

(b) A charging order constitutes a lien on the judgment debtor's distributional interest. The court may order a foreclosure of a lien on a distributional interest subject to the charging order at any time. A purchaser at the foreclosure sale has the rights of a transferee.

(c) [A]t any time before foreclosure, a distributional interest in a limited liability company that is charged may be redeemed:

(1) by the judgment debtor;

(2) with property other than the company's property, by one or more of the other members; or

(3) with the company's property, but only if permitted by the operating agreement.

(d) This Act does not affect a member's right under exemption laws with respect to the member's distributional interest in a limited liability company.

(e) This Section provides the exclusive remedy by which a judgment creditor of a member or a transferee may satisfy a judgment out of the judgment debtor's distributional interest in a limited liability company." 805 ILCS 180/30-20 (West

10

2006).

"Section 30-20 creates a special remedy that enables the creditor to realize the value of the judgment debtor's distributional interest, while at the same time protecting both the limited liability company's ability to continue to operate and the interests of the other members." *In re LaHood*, No. 07-81727, slip op. at 9 (Bankr. C.D. Ill. July 16, 2009) (denying a motion for relief from judgment).

Accordingly, a judgment creditor may not obtain a lien on the distributional interests of a limited liability company by serving the judgment debtor with a citation. *In re LaHood*, No. 07-81727, slip op. at 24 (Bankr. C.D. Ill. March 19, 2009); *Bloink v. Olson*, 265 Ill. App. 3d 711, 714 (1994) (generally, a supplementary proceeding under section 2-1402 the Code (735 ILCS 5/2-1402 (West 2006)), including a citation to discover assets, is the method by which a judgment creditor proceeds against a judgment debtor or third parties to discover and recover assets to apply in satisfaction of the judgment); 735 ILCS 5/2-1402(m) (West 2006) ("The judgment or balance due on the judgment becomes a lien when a citation is served ***"). In *In re LaHood*, the judgment creditor obtained a judgment against and served Michael LaHood with a citation to discover assets to impress a lien upon Michael's personal property by operation of the Code (735 ILCS 5/2-1402(m)(1) (West 2006)). On cross-motions for a summary judgment, the court determined that the lien was not valid against Michael's distributional interest in FLLZ, L.L.C., because the remedy set forth in section 30-20 of the Limited Liability Company Act (805 ILCS 180/30-20 (West 2006)) operated to the exclusion of all other remedies. *In re LaHood*, No. 07-81727, slip op. at 24 (Bankr. C.D. Ill. March 19, 2009); *In re LaHood*, No. 07-81727 (Bankr. C.D. Ill. July 16, 2009) (denying a motion for relief from judgment).

Thus, the charging order, not a citation to discover assets, is the postjudgment remedy specifically tailored to obtain and enforce a lien on the economic value that flows from

11

membership in a limited liability company. See *In re LaHood*, No. 07-81727, slip op. at 28-29 (Bankr. C.D. Ill. March 19, 2009). In the present case, we are asked to determine whether section 30-20 of the Limited Liability Company Act (805 ILCS 180/30-20 (West 2006)) also precludes the prejudgment attachment procedures provided for in section 4-101 of the Code (735 ILCS 5/4-101 (West 2006)) and thereby forecloses Mid-Illinois Bank's argument that its charging order/lien takes priority over MDB's and Regal's charging order/lien because it relates back to the prejudgment attachment order.

With regard to the priority to be given to multiple judgment creditors, section 4-142 of the Code, providing for a *pro rata* division in the proceeds of the property attached, does not apply here because that division is limited to "judgments for the payment of money in actions for attachment against the same defendant, returnable on the same day, and all judgments in other civil cases or orders for attachment against such defendant, recovered within 30 days from the day when the judgment in the first attachment upon which judgment is recovered is entered." 735 ILCS 5/4-142 (West 2006). Although the Limited Liability Company Act does not detail the priorities to be given to multiple judgment creditors that obtain charging orders directed to the same limited liability company interest, generally, "a lien that is first in time has priority and is entitled to prior satisfaction out of the property it binds." *Wagemann Oil Co. v. Marathon Oil Co.*, 306 Ill. App. 3d 562, 567 (1999). Further, the doctrine of relation back merges an attachment lien in the judgment and relates the judgment lien back to the date of the attachment. *United States v. Security Trust & Savings Bank of San Diego*, 340 U.S. 47, 50, 95 L. Ed. 53, 57, 71 S. Ct. 111, 113 (1950); *Gradel v. Piranha Capital, L.P.*, 495 F.3d 729, 731 (7th Cir. 2007); *Marchant v. Artists Embassy, Inc.*, 25 Ill. App. 2d 440, 447 (1960). We apply the latter principles to the present case.

Pursuant to the plain language of section 30-20(b) of the Limited Liability Company Act, a charging order is a lien against the judgment debtor's distributional interest in a limited

liability company, and when read in conjunction with section 30-20(e), the charging order provides the exclusive remedy by which a judgment creditor of a member may satisfy a judgment out of the judgment debtor's distributional interest in a limited liability company. 805 ILCS 180/30-20(b), (e) (West 2006). Mid-Illinois Bank argues that section 30-20(e) of the Limited Liability Company Act does not preclude a prejudgment attachment because the Limited Liability Company Act plainly and explicitly confines itself to postjudgment collection procedures, applying only to a "judgment creditor" that attempts to "satisfy a judgment" from a "judgment debtor's" distributional interest in a limited liability company (805 ILCS 180/30-20(e) (West 2006)). We agree.

An attachment is a legal remedy by which a debtor's property is secured and held to satisfy a debt that the alleged creditor hopes to prove in the creditor's principal suit. 735 ILCS 5/4-101 (West 2006); *Hensley Construction, LLC v. Pulte Home Corp.*, 399 Ill. App. 3d 184, 190, 926 N.E.2d 965, 971-72 (2010); *Franz v. Calaco Development Corp.*, 322 Ill. App. 3d 941, 947 (2001); *Old Kent Bank v. Stoller*, 254 Ill. App. 3d 1085, 1098 (1993); *Peter Fischer Import Motors, Inc.*, 121 Ill. App. 3d at 910. "When a writ of attachment issues[,] it lays hold of and appropriates the debtor's property, keeping it in custody of the law until it is needed to satisfy the creditor's demand." *Peter Fischer Import Motors, Inc.*, 121 Ill. App. 3d at 910. "Attachment, whether directly against a defendant debtor or his property in the possession of a third party, is a measure instituted before judgment on the merits of the principal claim of the plaintiff creditor." *Peter Fischer Import Motors, Inc.*, 121 Ill. App. 3d at 910. "It is only the judgment lien, and not the attachment lien, which can be enforced against the property attached, but the latter remains effectual for the purposes of preserving a priority of lien[] and may be referred to for purposes of identification." *Marchant*, 25 Ill. App. 2d at 446. "The purpose of the initial attachment writ is to inform the attachment-garnishee defendant that any funds in his hands may become payable to someone

13

other than his original creditor." *Marchant*, 25 Ill. App. 2d at 446.

Because a prejudgment attachment is a measure instituted before a judgment and seeks to preserve the property, as opposed to satisfying a judgment with the property, section 30-20 of the Limited Liability Company Act (805 ILCS 180/30-20 (West 2006)) does not preclude the prejudgment attachment procedures provided for in section 4-101 of the Code (735 ILCS 5/4-101 (West 2006)). Instead, the prejudgment attachment provisions in the Code and the charging order provisions in the Limited Liability Company Act can be read harmoniously so that no provision is rendered inoperative. See *Knolls Condominium Ass'n*, 202 Ill. 2d at 458-59.

MDB and Regal argue that because section 4-141 of the Code provides for postjudgment enforcement procedures with regard to attached property, *i.e.*, that property attached may be levied upon by the judgment entered in the attachment action and shall be sold as other property levied upon for the enforcement of a judgment for the payment of money (735 ILCS 5/4-141 (West 2006)), and those enforcement procedures are specifically precluded by section 30-20 of the Limited Liability Company Act (805 ILCS 180/30-20 (West 2006)), a member's distributional interests cannot be subject to a prejudgment attachment. However, Mid-Illinois Bank at no time pursued the postjudgment remedies provided for in section 4-141 of the Code but only sought to utilize the prejudgment attachment provisions in the Code, in conjunction with the charging order remedy in the Limited Liability Company Act. That avenue does not undermine the charging order's purpose to enable the creditor to realize the value of the judgment debtor's distributional interest, while at the same time protecting both the limited liability company's ability to continue to operate and the interests of the other members. See *In re LaHood*, No. 07-81727, slip op. at 9 (Bankr. C.D. Ill. July 16, 2009) (denying a motion for relief from judgment).

Accordingly, we hold that the prejudgment attachment procedures in the Code are

available to a potential judgment creditor to preserve a debtor-member's distributional interests in a limited liability company, and once a judgment is entered and a charging order is obtained, the charging order relates back to the date of the prejudgment attachment order for purposes of lien priority. Thus, Mid-Illinois Bank's lien has priority over the liens of MDB and Regal because its charging order relates back to its prejudgment attachment order entered on January 8, 2008, which preceded May 23, 2008, the date MDB and Regal obtained their charging order. Thus, the circuit court improperly denied Mid-Illinois Bank's request to enter a summary judgment in its favor.

CONCLUSION

For the foregoing reasons, the order of the circuit court of Madison County is reversed, and the cause is remanded for further proceedings.

Reversed, cause remanded.

CHAPMAN and SPOMER, JJ., concur.

NO. 5-09-0407

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| FIRST MID-ILLINOIS BANK & TRUST, N.A., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 07-L-1057 |
| | ) | |
| PATRICK A. PARKER and STEVEN F. GARDNER, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Four S, LLC, Garnishee, and First Bank, MDB | ) | Honorable |
| Electric, Inc., and Regal Sales, Inc., Third-Party | ) | Nelson Metz, |
| Claimants-Appellees). | ) | Judge, presiding. |

**Opinion Filed**: August 10, 2010

**Justices**: Honorable James M. Wexstten, J.,

Honorable Melissa A. Chapman, J.,
Honorable Stephen L. Spomer, J.,
Concur

**Attorney for Appellant**
David L. Antognoli, Goldenberg Heller Antognoli & Rowland, P.C., 2227 South State Route 157, P.O. Box 959, Edwardsville, IL 62025

**Attorneys for Appellees**
Bruce D. LeMoine, Armstrong Teasdale LLP, One Metropolitan Square, Suite 2600, St. Louis, MO 63102-2740 (attorney for First Bank (no brief filed)); Sandra J. Tatoian, Coffey & McCracken Law Firm, P.C., 125 North Buchanan Street, P.O. Box 247, Edwardsville, IL 62025-0247 (attorney for MDB Electric, Inc., and Regal Sales, Inc.)