# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* SOBLE FAMILY TRUST.

---

MELINDA SOBLE-GREENBERG,

       Petitioner-Appellee,

v

JEFFREY S. SOBLE,

       Appellant,

and

RICHARD S. SOBLE,

       Intervenor.

UNPUBLISHED
December 19, 2017

No. 334411
Oakland Probate Court
LC No. 2013-353868-TV

---

Before: JANSEN, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Jeffrey S. Soble appeals as of right the probate court's July 21, 2016 order to enforce the April 24, 2014 order pertaining to the termination and distribution of the Soble Family Trust. We affirm.

Melinda Soble-Greenberg, along with her two brothers, Richard Soble and Jeffrey, are the beneficiaries and co-trustees of the Soble Family Trust. Shelda Soble, the mother of Melinda, Jeffrey and Richard, was the settlor of the trust, which was initiated on July 14, 1986. Management of the trust proceeded relatively smoothly until recent years when the siblings became embroiled in disagreements regarding the management of the trust and distributions from the trust income. Melinda sought to have the trust terminated or decanted, asserting that Jeffrey and Richard engaged in "self-interested decisions" and made decisions pertaining to the trust without consulting Melinda. A majority, or two of the three trustees, is required to approve a trust transaction. One of the assets of the trust is an equity interest in an Illinois-based medical software company, Cyberpulse, LLC, which was started and managed by Jeffrey. In seeking to terminate or decant the trust, Melinda asserted that Jeffrey and Richard were consistently voting

-1-

together to effectively render Melinda impotent as a co-trustee in the making of decisions for the trust and to her detriment as a beneficiary.

On appeal, Melinda contests the jurisdiction of this Court to consider Jeffrey's appeal, asserting he is precluded from appealing as of right because the most recent order is only a post-judgment order of enforcement and not a final order. According to Melinda, the final order in this case was entered on May 30, 2014, when the trial court ordered the termination of the trust and distribution of the trust assets.

"The question of jurisdiction is always within the scope of this Court's review." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 709; 742 NW2d 399 (2007). "Whether a court has subject-matter jurisdiction is a question of law reviewed de novo." *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 51; 832 NW2d 728 (2013).

This Court "has jurisdiction of an appeal of right filed by an aggrieved party from . . . [a] judgment or order of a court or tribunal from which appeal of right to the Court of Appeals has been established by law or court rule." MCR 7.203(A)(2). In accordance with MCR 5.801(A), "[a]n interested person aggrieved by an order of the probate court may appeal as provided by this rule." The current version[1] of MCR 5.801(A) identifies orders "appealable of right to the Court of Appeals." A final order is defined, in relevant part, for civil cases in MCR 7.202(6)(a) as:

> (i) the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order,

Because the order at issue relates to the distribution of a trust asset, it could be construed as a final order under MCR 5.801(B)(2)(j), which governs final orders of the probate court "assigning, selling, leasing, or encumbering any of the assets of an estate or trust[.]" The problem with reliance on this subrule is that it fails to recognize that the order appealed from in this matter is not the final order as defined by MCR 7.202(6)(a)(i). The final order in this case was entered on May 30, 2014, because that is the order that terminated the original trust and distributed the trust assets. The order appealed from was entered more than two years later as a post-judgment order to clarify and effectuate the distribution of one of the trust assets addressed in the 2014 order. The most recent probate court order did not modify, alter or amend its final order. See *Matter of Werney's Estate*, 112 Mich App 601, 603-604; 316 NW2d 253 (1982) ("That provision of the order . . . which directed the estate to pay to appellee the amount specified in the [prior] order . . . did not decide the appellee's claim but rather held that the claim was allowed by the [prior] order and directed compliance with that order. Therefore, the order appealed from did not determine the substantive rights of the parties but enforced the previous determination made by the probate court. Therefore, this provision of the order appealed from is not a 'final' order appealable as a matter of right to this Court[.]").

---

[1] The court rule was amended in 2017. Changes in language deal primarily with the identification and inclusion of citation of statutes and other court rules not referenced in the earlier version of the court rule in effect at the time of the filing of this appeal.

This discrepancy was of greater significance under the version of MCR 5.801 in effect at the time this appeal was filed, which distinguished between orders appealable of right to this Court and to the circuit court, MCR 5.801(B), (C), and by certification by the probate court, MCR 5.801(F). These distinctions have been eliminated in the current version of MCR 5.801(B), which no longer includes appeals from the probate court to the circuit court and which now specifically states: "All orders of the probate court not listed in subrule (A) are appealable to the Court of Appeals by leave of that court." This is confirmed in the "staff comment" section to the 2017 amendment of MCR 5.801, which explains, in relevant part: "These amendments conform to recent statutory changes that require all appeals from probate court to be heard in the Court of Appeals, instead of the bifurcated system that previously required some probate appeals to be heard in the Court of Appeals and some to be heard in the local circuit court."

Ultimately, the discrepancy is irrelevant. The order being challenged in this appeal is appealable to this Court either as of right or by leave granted. While we agree that Jeffrey should have sought leave to appeal, this determination does not preclude the matter from going forward. This Court "may, in our discretion, accept the pleadings as an application for leave to appeal, grant the appeal, and resolve the appealed issue on the merits." *Waatti & Sons Electric Co v Dehko*, 230 Mich App 582, 585; 584 NW2d 372 (1998). As historically recognized in *Guzowski v Detroit Racing Ass'n, Inc*, 130 Mich App 322; 343 NW2d 536 (1983):

> The problem posed here does not go to this Court's power or authority to render judgment in a class of cases but, rather, concerns merely how this Court should respond when a litigant seeks review of a . . . court order by one method when the litigant should have sought review by another method and where it is undisputed that this Court does, in fact, have the legal authority to resolve the underlying merits of the action. [*Id*. at 325-326 (footnote omitted).]

As such, we exercise our discretion and proceed by treating this appeal as on leave granted. We note that Jeffrey's claim of appeal was timely filed in conformance with MCR 7.205(A)(2), having been filed within the 21 day limitation required after entry of an order on a motion for reconsideration.

Next, we address the substantive issue on appeal involving the distribution of assets upon termination of the trust. Jeffrey contends that the probate court no longer retains jurisdiction over the trust, which was terminated and distributed two years ago. He suggests that the current order merely duplicates the 2014 order terminating the trust and distributing its assets and, therefore, cannot be complied with because the distribution of assets ordered has already been effectuated. Jeffrey further contends that the beneficiaries and co-trustees of the trust lack the authority to transfer the voting interest in Cyberpulse premised on Illinois law, the operating agreement of Cyberpulse and because only Jeffrey in his capacity as manager of Cyberpulse has such authority. In addition, because Jeffrey was not sued by Melinda in his capacity as a manager or agent of Cyberpulse, he contends that the probate court lacks the authority to order Cyberpulse or Jeffrey to grant Melinda voting rights. Specifically, Jeffrey argues that the distributional interest of the trust in Cyberpulse was properly granted to the beneficiaries in accordance with the termination of the trust but that the membership interest in Cyberpulse enjoyed by the trust is not similarly transferable and requires the approval of Jeffrey in his capacity as manager of Cyberpulse, which he is unwilling to provide. Jeffrey further asserts that

the probate court's most recent order was peremptory in nature and denied him his right to due process.

Issues of statutory interpretation and questions of law are subject to review de novo. *In re Capuzzi Estate*, 470 Mich 399, 402; 684 NW2d 677 (2004); *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 532; 866 NW2d 817 (2014). Similarly, "[t]he determination whether a party has been afforded due process is a question of law subject to review de novo on appeal." *Id.* at 531.

At the outset, we reject Jeffrey's claim that the probate court lacked jurisdictional authority to enforce its own order. MCL 600.847 states: "In the exercise of jurisdiction vested in the probate court by law, the probate court shall have the same powers as the circuit court to hear and determine any matter and make any proper orders to fully effectuate the probate court's jurisdiction and decisions." In addition, MCL 700.1302(b)(*v*) provides, in relevant part, that a probate court maintains "exclusive legal and equitable jurisdiction" with regard to:

> A proceeding that concerns the validity, internal affairs, or settlement of a trust; the administration, distribution, modification, reformation, or termination of a trust; or the declaration of rights that involve a trust, trustee, or trust beneficiary, including, but not limited to . . . . [The determination of] a question that arises in the administration or distribution of a trust, including a question of construction of a will or trust.

After the payment of $92,562 each to Richard and Jeffrey "to equalize principal distributions" made from the trust to Melinda, the probate court originally ordered the termination and distribution of the trust and its assets to occur in the following manner:

> [T]he remaining trust property, net of reasonable tax preparation fees, shall then be divided on a pro rata basis and distributed equally and outright to Melinda Soble-Greenberg, Jeffrey Soble and Richard Soble.

Notably, at the time this order was entered, the parties do not dispute that the trust maintained a financial interest and membership interest in Cyberpulse, with voting rights.

Richard and Jeffrey stipulated to the distribution of the trust assets in order to avoid the probate court's indication that it would not break up the trust but would instead appoint an independent trustee to deal solely with matters that involved the self-interest of any of the trustees. At no time during the proceedings was it discussed or disclosed that the trust's voting rights in Cyberpulse were to be excluded or were not considered a part of the anticipated distribution of assets. In his role as co-trustee, Jeffrey agreed to distribution of the trust assets. But as an agent or manager of Cyberpulse, Jeffrey contends that he is not required to distribute or award precisely the same interest held by the trust to Melinda. Importantly, he is not precluded from providing her membership or voting rights, rather he simply elects or prefers not to award her a membership interest with voting rights. Arguably, then, the value of the distribution was not equivalent or distributed on a "pro rata" basis and "equally and outright."

It is obvious from the probate court's response at the most recent hearing that the probate court understood the stipulation of the parties to establish an agreement that all of the assets held

by the trust, less the amounts paid to equalize payments of principal, were to be distributed to the beneficiaries in a manner that was equivalent in amount and type as held by the trust. For Jeffrey, a co-trustee of the trust, to now contend that the probate court lacked the authority to require him, as manager of Cyberpulse, to effectuate the probate court's order of distribution is disingenuous. Courts have imposed on trustees "the fiduciary duties of honesty, loyalty, restraint from self-interest and good faith." *In re Green Charitable Trust*, 172 Mich App 298, 313; 431 NW2d 492 (1988).

Jeffrey's contention that the probate court's issuance of the order appealed from cannot be effectuated because the trust had already been terminated and the current order merely directs the same behavior as the original 2014 order to distribute assets is also disingenuous. The original 2014 order directed that "the remaining trust property . . . be divided on a pro rata basis and distributed equally and outright" to the three beneficiaries. The need for the second order to enforce the distribution of one of the assets involved in the 2014 order, the voting interest in Cyberpulse, is more explicit given the conflict that has arisen between the parties. In the most recent order, the probate court instructed the trustees to execute assignments of the trust's membership interest in Cyberpulse . . . "equally and outright" to the three trust beneficiaries. Given Jeffrey's contention that the 2014 order did not and could not encompass this requirement, we reject his argument that the two orders are identical and that his compliance with the 2014 order precludes his ability to comply with the subsequent or later order.

In part, Jeffrey's arguments are dependent on the Cyberpulse Operating Agreement (CPOA) and whether the order governing the distribution of the trust assets comprises a transfer or an involuntary withdrawal. The CPOA, Article I, defines a "transfer" as "any sale, hypothecation, pledge, assignment, attachment, or other transfer." The same article defines an "involuntary withdrawal," "with respect to any Member," as "the death, bankruptcy, insolvency, incompetence, or dissolution, termination of existence, or liquidation of such Member." In accordance with Article 10, Section I of the CPOA, "No Member may Transfer all or any portion of such Member's Membership Interest, and no Unit Holder may Transfer any Units, except with the prior written consent of the Manager. . . . Any person to whom a Membership Interest is attempted to be transferred in violation of this Section shall not be entitled to vote on any matters coming before the Members . . . or have any other rights with respect to such Membership." Alternatively, Section 3 of Article 10 of the CPOA addresses involuntary withdrawals and indicates:

> Immediately upon the occurrence of an Involuntary Withdrawal, the successor of the withdrawn Member shall thereupon become an [sic] Unit Holder, but not a Member unless admitted by the Manager. If the Manager is the Member with respect to whom an Involuntary Withdrawal occurs, however, any successor to any of his Units shall be admitted to the Company as (and shall automatically become) a Member in respect to such Units without the consent, approval or any other action on the part of any Member. The successor to a Member with respect to whom an Involuntary Withdrawal has occurred shall have all the rights and interests of a Unit Holder (and, if admitted to the Company as a Member, all of the rights of a Member), but neither the withdrawn Member nor his successor shall be entitled to receive in liquidation of the Units or the withdrawn Member's

Membership Interest . . . the fair market value of such Units or Membership Interest. . . . unless the Manager otherwise agrees in writing.

Jeffrey as the manager of Cyberpulse, under the CPOA, has the authority to grant membership rights. Arguably, if the distribution of the trust assets to the beneficiaries is construed as a "transfer," it required the consent of Jeffrey as the manager of Cyberpulse. Thus, the 2014 stipulated probate court order appears to fulfill the consent requirements of the CPOA, Article 10, Section 1, based on Jeffrey's stipulation to the probate court order.

It is only the membership interests that are transferred without the written approval of the manager that are precluded from voting on issues that arise before the Members. Arguably, Section 3 of Article 10, addressing involuntary withdrawals and the necessity of manager approval to retain membership status, is also encompassed by the 2014 probate court order, to which Jeffrey stipulated. Although, ultimately, the trust was terminated, the termination was effectuated to permit the transfer of its assets to the beneficiaries. The restrictions on involuntary withdrawals appears designed more to avoid problems resulting from receiverships, bankruptcies or other hostile or disinterested assumption of rights rather than the formality of transferring a trust asset to an intended beneficiary. Contrary to Jeffrey's characterization, the probate court is not exceeding its authority by ordering Jeffrey as the manager of Cyberpulse to effectuate a transfer of rights to Melinda. Rather, the probate court is ordering Jeffrey to comply with the probate court order to which he agreed and stipulated as a co-trustee of the trust.

Jeffrey further contends that the probate court's order is violative of Illinois law, where Cyberpulse is established. Specifically, Jeffrey relies on a distinction in 805 ILCS 180/1-5 between a "distributional interest" and a "membership interest." A "distributional interest" is defined as "a member's right to receive distributions of the limited liability company's assets, but no other rights or interests of a member." 805 ILCS 180/1-5. In contrast, a "membership interest" is defined as "all of a member's rights in the limited liability company, including the member's right to receive distributions of the limited liability company's assets." 80 ILCS 180/1-5. Jeffrey contends that he complied with the probate court's 2014 order by granting Melinda a distributional interest in Cyberpulse.

According to Illinois law, pertaining to a "member's distributional interest":

(a) A member is not a co-owner of, and has no transferable interest in, property of a limited liability company.

(b) A distributional interest in a limited liability company is personal property and, subject to Sections 30-5 and 30-10, may be transferred in whole or in part.

(c) An operating agreement may provide that a distributional interest may be evidenced by a certificate of the interest issued by the limited liability company and, subject to Section 30-10, may also provide for the transfer of any interest represented by the certificate. [805 ILCS 180/30-1.]

Concurrently, 805 ILCS 180/30-5(b) provides: "A transfer of a distributional interest does not entitle the transferee to become or to exercise any rights of a member. A transfer entitles the

transferee to receive, to the extent transferred, only the distributions to which the transferor would be entitled."[2]   The rights of a "transferee" are delineated in 805 ILCS 180/30-10 as follows:

(a) A transferee of a distributional interest may become a member of a limited liability company if and to the extent that the transferor gives the transferee the right in accordance with authority described in the operating agreement or all other members consent.

(b) A transferee who has become a member, to the extent transferred, has the rights and powers, and is subject to the restrictions and liabilities, of a member under the operating agreement of a limited liability company and this Act.  A transferee who becomes a member also is liable for the transferor member's obligations to make contributions under Section 20-5 and for obligations under Section 25-35 to return unlawful distributions, but the transferee is not obligated for the transferor member's liabilities unknown to the transferee at the time the transferee becomes a member.

(c) Whether or not a transferee of a distributional interest becomes a member under subsection (a) of this Section, the transferor is not released from liability to the limited liability company under the operating agreement or this Act.

(d) A transferee who does not become a member is not entitled to participate in the management or conduct of the limited liability company's business, require access to information concerning the company's transactions, or, except as provided in subsections (c) and (d) of Section 1-40, inspect or copy any of the company's records.

(e) A transferee who does not become a member is entitled to:

(1) receive, in accordance with the transfer, distributions to which the transferor would otherwise be entitled;

(2) receive, upon dissolution and winding up of the limited liability company's business:

---

[2] We note similarities in Michigan law, specifically MCL 450.4505, which states in relevant part: "(1) Except as provided in an operating agreement, a membership interest is assignable in whole or in part.  (2) An assignment of a membership interest does not of itself entitle the assignee to participate in the management and affairs of a limited liability company or to become or exercise any rights of a member.  An assignment entitles the assignee to receive, to the extent assigned, only the distributions to which the assignor would be entitled."   See also MCL 450.4506 pertaining to the membership interests of assignees.

(A) in accordance with the transfer, the net amount otherwise distributable to the transferor; and

(B) a statement of account only from the date of the latest statement of account agreed to by all the members.

(f) A limited liability company need not give effect to a transfer until it has notice of the transfer. [805 ILCS 180/30-10.]

Case law in Illinois has recognized the need for transfers of members' interests in a limited liability corporation to comply with the operating agreement of the corporation. For instance, in *In re Marriage of Schlichting*, 2014 IL App 2d 140158; 385 Ill Dec 859, 867-868; 19 NE3d 1055 (2014), it was determined that the trial court violated the terms of the limited liability corporation's operating agreement when it ordered the member to sell her membership interest to her husband, in this divorce proceeding because the operating agreement "required that the LLC buy out a divorcing member's interest. . . . Contrary to these terms, the court did not allow the LLC to buy out [the wife's] interest; rather, it allowed [the husband], a nonmember, to buy out [the wife's] interest." Similarly, in *First Mid-Illinois Bank & Trust, NA v Parker*, 403 Ill App 3d 784; 342 Ill Dec 922, 928; 933 NE2d 1215 (2010), it was recognized:

> Where a limited liability company is member-managed, a member may transfer a distributional interest entitling the transferee to receive the distributions that would have been made to the transferor, but the Limited Liability Company Act does not entitle the transferee to become or to exercise any rights of a member, unless the operating agreement so specifies or all the other members consent. [Citations omitted.]

The circumstances of this case are unique and distinguishable. While Jeffrey is correct that Illinois law requires assignments or distributions of interests in a limited licensed company (LLC) to comport with the operating agreement of the LLC, there is nothing that impedes Jeffrey from treating Melinda as a member in the same manner afforded to the trust. The CPOA gives Jeffrey the authority to grant or award Melinda a membership interest in Cyberpulse. And it is undisputed that the trust had a membership interest with voting rights in Cyberpulse. In agreeing as a co-trustee to assign the trust's interest in Cyberpulse on a "pro rata basis" and "equally and outright" to his co-trustees, Richard and Melinda, Jeffrey agreed to award to these individuals the same interest enjoyed by the trust.

In addition, each of the co-trustees, Richard, Jeffrey and Melinda, signed an individual "Assignment of Membership Interest," which stated:

> FOR VALUE RECEIVED, Richard S. Soble, Jeffrey S. Soble and Melinda Soble[-]Greenberg, as co-trustees of the Soble Family Trust u/a/d July 14, 1986 ("Assignor"), hereby transfer and assign all of Assignor's interests (the "Assigned Membership Interest") in Cyberpulse LLC, a limited liability company ("Company"), to Richard S. Soble, Jeffrey S. Soble and Melinda Soble[-]Greenberg individually ("Assignees") in equal (1/3) shares. This assignment may be executed in any number of counterparts.

Jeffrey, as the manager of Cyberpulse, signed the consent to assignment of interest, which stated, in relevant part: "Consent. The undersigned hereby consents to the transfer and assignment by the Assignor of the Membership Interest and/or Units to Assignees pursuant to the Assignment (but not to the substitution of the Assignees as Members)."[3] Only Jeffrey signed the consent to assignment, which appears to unilaterally alter the assignment of interest, whereas each of the beneficiaries executed the assignments of interest, which convey that the document intended to "transfer and assign all of Assignor's interests (the "Assigned Membership Interest") in Cyberpulse LLC, a limited liability company ("Company"), to Richard S. Soble, Jeffrey S. Soble and Melinda Soble[-]Greenberg individually ("Assignees") in equal (1/3) shares."

Trustees are required to "administer [a] trust solely in the interests of the trust beneficiaries." MCL 700.7802(1). "[T]ransactions involving self-dealing should be closely scrutinized . . . to see whether the trustee's actions indicate[ ] any fraud, bad faith or overreaching on the part of the trustee." *Green*, 172 Mich App at 314. "Bad faith is not a specific act in itself, but defines the character or quality of a party's actions." *Id*. at 315. "[B]ad faith has been defined as arbitrary, reckless, indifferent, or intentional disregard of the interests of the person owed a duty." *Id*. (quotation marks and citation omitted). Jeffrey's role as trustee conflicted with his self-interest as manager of Cyberpulse. The award of a different level or type of interest in Cyberpulse to the co-trustees and beneficiaries does not comply with the probate court's order that each of the beneficiaries receive a share of the trust assets "equally and outright."

Finally, Jeffrey contends that he was denied his right to due process because the probate court's orders do not fully explicate the court's reasoning. "The essential [elements] of procedural due process are adequate notice, an opportunity to be heard, and a fair and impartial tribunal." *Hughes v Almena Twp*, 284 Mich App 50, 69; 771 NW2d 453 (2009). Jeffrey does not claim he was unaware that proceedings were scheduled and occurring in the probate court in this matter. Three separate hearings occurred. While Jeffrey elected not to be present, he permitted his interests to be represented by Richard and retained counsel. Extensive briefing was conducted in this matter, and there was no suggestion during the proceedings that the probate judge was biased in any manner. At this late date, any assertion by Jeffrey that he was denied due process in this regard is without merit or support in the record.

Further, the probate court's order was not "peremptory" considering the opportunities to submit briefs and present argument at the hearings. And we reject Jeffrey's argument that Melinda's motion for enforcement was an improper motion for summary disposition, which the probate court lacked the authority to grant "*sua sponte* under MCR 2.116 in contravention of a party's due process rights." Under certain conditions, "a trial court has authority to grant summary disposition sua sponte[.]" *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009). And when the trial court does so, "due process can be satisfied by affording a party

---

[3] The parties dispute the wording of the signed version with Jeffrey claiming the document was prepared by Melinda's counsel and Melinda asserting that the version signed was modified by Jeffrey to include the limiting provision.

an opportunity for rehearing." *Id.* at 485-486. In this case, the parties were permitted to submit briefs and participate in oral argument, and were also afforded the opportunity to file a motion for reconsideration, which was rejected by the probate court. Accordingly, Jeffrey failed to establish that he was denied due process in this regard.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron